Ernest L. KING, Sr., et al., Plaintiffs,

v.

E.I. du PONT de NEMOURS & CO., et al., Defendants.

Civ. A. No. 90–0127–B.

United States District Court, D. Maine.

Oct. 23, 1992.

James F. Freeley, Jr., Boston, Mass. and John F. Harrington, Jr., Winterport, Me., for plaintiffs.

John C. Hunt, Maine Dept. of Transp., Augusta, Me., for defendant Maine Dept. of Transp.

George S. Isaacson, Brann & Isaacson, Lewiston, Me., for defendant Dow Chemical.

Peter J. Rubin, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for defendants Velsicol Chemical Co. and Sandoz Corp.

Charles A. Harvey Jr., Verrill & Dana, Portland, Me., for defendant E.I. du Pont de Nemours.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

This action is before the Court on Defendants' Joint Motion for Summary Judgment. The Plaintiffs allege that they were injured by a failure on the part of the Defendant chemical corporations to warn them about the safe and proper use of certain chemical herbicide products. The Plaintiffs also allege that they were injured by a failure on the part of the chemical corporations to warn them of the harm and danger of exposure to these same chemical products. The Plaintiffs seek to impose liability under state tort law theories of negligence and strict liability.

The parties have stipulated that all of the product labels in question were submitted to and approved by the United States Environmental Protection Agency ("EPA") under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA" or the "Act"). 7 U.S.C. § 136 *et seq.* Under FIFRA, the EPA's authority over herbicide labeling is exclusive: states may not impose any requirements in addition to or different from those required by the EPA. 7 U.S.C. § 136v(b). The issue in this case is whether FIFRA's mandate barring states from imposing requirements on herbicide labels precludes state common law tort actions based on inadequate warnings. There has been disagreement among the circuit and district courts regarding the availability of state common law damage actions to plaintiffs injured by products labeled in accordance with FIFRA. We consider this issue under the standards set forth in the Supreme Court's recent decision in *Cipollone v. Liggett Group, Inc.*, which examined the issue of tort preemption under a statute comparable to FIFRA. —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Although we acknowledge the accuracy of the two *Cipollone* minority opinions which state that they "can only speculate as to the difficulty lower courts will encounter in attempting to implement the Court's decision", we are satisfied that *Cipollone* mandates that the Plaintiffs' state tort actions are preempted under FIFRA as a matter of law. *Cipollone*, —— U.S. at ——, ——, 112 S.Ct. at 2631, 2637 (Blackmun, J. and Scalia, J. concurring in part, and dissenting in part). Accordingly, Defendants' motion is *GRANTED.*

## I. FACTS

Plaintiffs, Ernest King, Sr. ("King") and Edward Higgins, Jr. ("Higgins") were employed by the Maine Department of Transportation ("MDOT"). As part of their employment duties, Plaintiffs seasonally

sprayed one or more herbicides manufactured by E.I. du Pont de Nemours and Company ("du Pont"), the Dow Chemical Company ("Dow"), Velsicol Chemical Corporation ("Velsicol") and Sandoz Corporation ("Sandoz"). Plaintiffs allege that as a result of their exposure to the herbicides they have experienced nausea, headaches, loss of appetite, irritability, loss of concentration, muscle pains, joint pain and mood changes. Further, King alleges that he suffers from sleep disturbance, irritability, memory loss and continued deterioration of vision, while Higgins alleges that he suffers from all of the ailments suffered by King except impaired vision, and that he also suffers from numbness in his extremities.[1] The Plaintiffs allege they were exposed to Hyvar X, Krenite, Krenite S, and Krovar I (du Pont products), Esteron 245, Tordon 101, Garlon 3A, Garlon 4 and Dowpon M (Dow products) and Banvel 720 and Banvel 4WS (Velsicol and Sandoz products). The parties stipulated that all of the product labels in question were submitted to and approved by the EPA in accordance with FIFRA. Defs.' Stip. Paragraph 1 (July 24, 1991). The issue presented in this case is whether FIFRA preempts state tort claims based on failure to warn or inadequate warnings relating to products subject to the Act's labeling requirements.

## II. FIFRA

Before being sold or distributed in the United States, all herbicides must be registered under FIFRA. 7 U.S.C. § 136(a). Originally enacted in 1947, FIFRA "was designed to work in harmony with the uniform state insecticide, fungicide and rodenticide act which was adopted in many States." S.Rep. No. 92–838, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 3999. In 1972 FIFRA was amended through the Federal Environmental Pesticide Control Act. Pub.L. No. 92–516, 86 Stat. 975. The amendments, were prompted by environmental and safety concerns, as well as a "growing perception that the existing legislation was not equal to [its] task". *See Ruckelshaus v.*

*Monsanto Co.*, 467 U.S. 986, 991, 104 S.Ct. 2862, 2866, 81 L.Ed.2d 815 (1984). The amendments added use regulations and strengthened the Act's labeling standards and the EPA's enforcement powers, converting FIFRA from a labeling law into a comprehensive regulatory statute.

Under the Act as amended, the EPA cannot approve an herbicide unless it complies with the requirements established in FIFRA, and the EPA labeling regulations promulgated to implement the Act. § 136a(c)(5); 40 C.F.R. § 152.112 *et seq.* The EPA regulations detail how warning labels are to be presented and provide specific requirements for the content, placement, type, size and promotion of the warnings. 40 C.F.R. § 156.10(h). "Label" is defined under FIFRA to include "the written, printed or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers." 7 U.S.C. § 136(p)(1). Required warnings are specified according to the degree to which ingestion or contact with an herbicide is toxic, and these warnings must include precautionary statements about risks posed to humans. 40 C.F.R. § 156.10(h)(2)(i)(A). The regulations also specify necessary directions on how to use each chemical. 40 C.F.R. § 156.10(i).

The procedure for registration under FIFRA requires that each applicant file a statement with the Administrator of the EPA which includes the name of the chemical, a complete specimen copy of the labeling of the chemical, a statement of all claims to be made for the product, any directions for the product's use and a full description of the tests made and the results thereof upon which the claims are based. 7 U.S.C. § 136a(c)(1)(B)–(F); 40 C.F.R. Parts 152–55. If a manufacturer violates either the general requirements of FIFRA or the regulations promulgated by the EPA, the EPA is authorized to notify the United States Attorney General who, in turn, is authorized to initiate criminal or

---

**1.** Deborah King and Donna Higgins, the wives of the MDOT employees, also joined in this action, claiming loss of consortium.

civil proceedings against the violator. 7 U.S.C. § 136g(c)(1).[2]

The data required to be submitted to the EPA varies with the nature of the chemical and its intended use. *See* 40 C.F.R. § 158.-100–158.740. On the basis of the information provided by the registrant, the EPA must register the product if it determines that:

(A) [I]ts composition is such as to warrant the proposed claims for it;

(B) [I]ts labeling and other material required to be submitted comply with the requirements of this [Act];

(C) [I]t will perform its intended function without unreasonable adverse effects on the environment; and

(D) [W]hen used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5). An unreasonable adverse effect on the environment is defined under the Act as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

The 1972 Amendments added a section expressly setting forth the states' authority to regulate pesticides. This section states in relevant part:

(a) **In general.** A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this [Act].

(b) **Uniformity.** Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this [Act].

7 U.S.C. § 136v(a)–(b) (subsection headings added by 1988 amendments).

The statute's language, by itself, is a powerful limit on state power over labeling. A report accompanying the bill, as original-ly reported out of the House Committee, also indicates the limits on state power due to the division of authority between the federal and state governments: "In dividing the responsibility between the States and the Federal Government for the management of an effective pesticide program, the Committee had [sic] adopted language which is intended to completely preempt State authority in regard to labeling and packaging." H.R.Rep. 92–511, 92d Cong. 1st Sess. 16 (1971), *as cited in Papas v. Upjohn Co.*, 926 F.2d 1019, 1023 (11th Cir. 1991). "Congress recognized that while the intent of the provision was 'to leave to the States the authority to impose stricter regulation on pesticide *use* than that required under the Act,' subsection (b) preempted 'any State labeling or packaging requirements differing from such requirements under the Act.'" *Papas*, 926 F.2d at 1023 (footnotes omitted).

## III. PREEMPTION

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Since the Supreme Court's decision in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981), *as cited in Cipollone v. Liggett Group, Inc.*, — U.S. —, —, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992).

"If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted." *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citing *Pacific Gas & Electric Co. v. Conservation & Dev. Comm'n.*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)). Congressional intent may be expressly stated

---

**2.** Among other things, FIFRA makes it unlawful to sell or distribute a herbicide that is not registered or to alter the composition of the product after EPA approval. 7 U.S.C. § 136j(a)(1)(A), (2)(O).

in the terms of the statute or "implicitly contained in [the statute's] structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " of preemption analysis. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963)).

 Where Congress has expressly provided for preemption, the court need only determine the scope of the preemption. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618. In the absence of express preemptive language, Congress' intent to supersede state law may be implied (1) where Congress has completely occupied the law's field of operation, (2) where compliance with both federal and state law would be impossible, or (3) where the state law presents an obstacle to the achievement of the full purposes and objectives of Congress. *Wisconsin Public Intervenor v. Mortier*, —— U.S. ——, ——, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991). The principle of preemption "applies whether the federal law is embodied in a statute or regulation, . . . and whether the state law is rooted in a statute, writ, regulation, or *common law rule.*" *Taylor v. General Motors Corp.*, 875 F.2d 816, 826 (11th Cir.1989) *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990) (emphasis added). As the Supreme Court explained in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), "regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation . . . is designed to be a potent method of governing conduct and controlling policy." *Id.* at 247, 79 S.Ct. at 780.

In determining whether state law is preempted, courts must presume that the historic police powers of the states are not superseded by the Federal Act unless that is the *clear and manifest* purpose of Congress. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (emphasis added). For example, in *Mortier*, the Supreme Court addressed whether local governments could regulate the use of pesticides despite the fact that FIFRA's savings clause, 7 U.S.C. § 136v(a), refers only to "States". *Mortier*, —— U.S. at ——, 111 S.Ct. at 2476. The Court showed great reluctance to read express preemption of local regulation from congressional silence. *Id.* —— U.S. at ——, 111 S.Ct. at 2483. The Court rejected an implied preemption analysis as well, refusing to infer that Congress "occupied the field" of the law's operation. *Id.* —— U.S. at ——, 111 S.Ct. at 2486. Further, the Court found no conflict between the allowance of local regulation and FIFRA's goal of a coordinated "regulatory partnership" between federal and state authorities. *Id.* —— U.S. at ——, 111 S.Ct. at 2487.

 Other recent Supreme Court tort preemption cases reveal a similar reluctance to infer preemption. *See e.g., International Paper Co. v. Ouellette*, 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987) (while Clean Water Act held to preempt nuisance action under Vermont common law, Act does not preempt suit in Vermont District Court under New York law, where New York water pollution caused Vermont injury.); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (state punitive damage provisions not preempted by Atomic Energy Act). In addition, where Congress has provided an express preemption clause, the Supreme Court's plurality opinion in *Cipollone v. Liggett Group, Inc.*, indicates that the presumption against preemption requires courts to read the clause narrowly. —— U.S. at ——–——, 112 S.Ct. at 218–19.

*Cipollone* concerned the preemptive effect of federal cigarette laws passed in 1965 and 1969 on state common law failure to warn, warranty and misrepresentation actions. The *Cipollone* Court found that the preemptive scope of the Cigarette Acts was governed entirely by the *express* language in Section 5 of each Act. *Id.* (emphasis added). Section 5 of the Federal Cigarette Labeling and Advertising Act of

1965 was captioned "Preemption," and provided: "(a) No statement relating to smoking and health, other than the [§ 4] statement . . ., shall be required in the advertising of any cigarette package," and "(b) No [such] statement . . . shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with § 4." Pub.L. 89–92, 79 Stat. 282, as amended, 15 U.S.C. §§ 1331–1340. Construing the 1965 provision "in light of the presumption against the pre-emption of state police power regulations," the court found no evidence of a congressional plan to preempt state common law damage actions. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618. Similarly, the Court found no "general inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common law damages actions" under this statutory scheme. *Id.* Instead, the Court determined that the main purpose of the 1965 Act was to avoid consumer confusion by ensuring uniform labeling, a purpose which could coexist along with state tort actions. *Id.* —— U.S. at ——, 111 S.Ct. at 2619.

The *Cipollone* Court reached a somewhat different result in analyzing the 1969 Cigarette Act. Section 5(b) was amended by the Public Health Cigarette Smoking Act of 1969 to specify: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled [in accordance with § 4 of this Act]." Pub.L. 91–222, 84 Stat. 87, as amended, 15 U.S.C. § 1334(b). The change in the wording of the statute from preventing states from requiring any "statement relating to smoking" to barring states from imposing any "requirement or prohibition" on the advertising or promotion of cigarettes indicated to the Court that Congress intended to broaden the preemptive scope of the 1969 Cigarette Act. *Cipollone*, —— U.S. at —— ——, 112 S.Ct. at 2619–20. The *Cipollone* plurality held that the phrase "no requirement or prohibition" sweeps broadly enough to preempt common law rules as well as positive enactments. *Id.* The Court stated that "common law damages actions . . . are premised on the existence of a legal duty and it is difficult to say that such actions do not impose 'requirements or prohibitions'". *Id.*

Although the *Cipollone* Court found that state common law regulations were clearly preempted by the 1969 Cigarette Act, the Court concluded that failure to warn state tort law claims are preempted only to the extent they rely on a state law requirement or prohibition with respect to advertising or promotion. *Id.* —— U.S. at ——, 111 S.Ct. at 2621. The Court added that the 1969 statute did not preempt claims that rely solely on testing or research practices. *Id.* Thus, insofar as the claims required a showing that post–1969 advertising or promotions should have included additional, or more clearly stated warnings, those claims were found to be preempted. *Id.*

## IV. DISCUSSION

As already noted in Section II, above, FIFRA contains an express preemption provision with respect to state herbicide labeling requirements. 7 U.S.C. § 136v(b). Although Plaintiffs have stipulated that all of the product labels underlying this controversy were submitted to and approved by the EPA under FIFRA, they contend that Defendants failed to adequately warn them of the dangers inherent in the products. Defendants argue that these claims are expressly preempted under section 136v(b) because, if successful, such claims would constitute state-imposed "requirements for labeling or packaging in addition to or different from those required [under FIFRA]." *Id.* Alternatively, Defendants claim that FIFRA impliedly preempts such claims.

There is a split among the circuit and district courts on the issue of whether FIFRA preempts state failure to warn tort claims. In *Ferebee v. Chevron Chemical Co.*, the District of Columbia Circuit held that FIFRA did not expressly or implicitly preempt failure to warn claims. 736 F.2d 1529 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). However, in *Papas v. Upjohn Co.,* the

Eleventh Circuit held that FIFRA did implicitly preempt such claims. 926 F.2d 1019 (11th Cir.1991), *vacated* —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (June 29, 1992).

■ Prior to the Supreme Court's ruling in *Cipollone*, courts examining the preemptive scope of FIFRA failed to apply express preemption analysis exclusively. After deciding *Cipollone*, the Supreme Court directed the Eleventh Circuit Court of Appeals to review its decision in *Papas*, in light of *Cipollone*. Because *Cipollone* rested on express preemption under a statute containing language almost identical to the relevant statutory language in FIFRA, we are satisfied that under *Cipollone's* standards, the language of FIFRA presents a case of express preemption.[3]

The word "requirement" in the 1969 Cigarette Act led the *Cipollone* Court to conclude that failure to warn claims were preempted to the extent that they involved claims that cigarette advertisements had provided inadequate warnings. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2621. Section 136v(b) of FIFRA says that states "shall not impose or continue in effect any *requirements* for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b) (emphasis added). Since the 1969 Cigarette Act which prohibits states from imposing "requirements" on cigarette advertising was held to preempt common law damage actions with respect to inadequate warnings in *Cipollone*, we hold that the prohibition of "requirements" under FIFRA preempts common law damage actions for failure to warn in the herbicide labeling context. Since Plaintiffs' claims require a showing that Defendants' packaging or labeling should have included additional, different or more clearly stated warnings, they are expressly preempted under FIFRA.

Our determination that *Cipollone* mandates a finding that FIFRA preempts state common law damage actions for failure to warn is supported by the recent opinion in *Burke v. Dow Chemical Co.*, 797 F.Supp. 1128 (E.D.N.Y.1992). *Burke* involved two children who were allegedly brain damaged due to their mother's exposure to household insecticides while pregnant. Relying on state tort law, the children's parents argued that the products lacked proper warnings. The defendants moved for summary judgment on the ground that the suit was preempted by FIFRA. The *Burke* Court determined that "the precise question before the court ... [was] whether plaintiff's failure to warn claims, if successful, would amount to a state-imposed 'requirement[ ] for labeling or packaging in addition to or different from those required [under FIFRA].'" *Id.* at 1138. Applying *Cipollone*, the Eastern District of New York held that if EPA-approved labels were in fact affixed to the relevant containers, plaintiffs may not claim that the defendants' products were mislabeled. *Id.* at 1140. As in *Burke*, we find that because the labels in question were approved by the EPA under FIFRA, the Plaintiffs are precluded from pursuing their claim that Defendants' failed to adequately label their products.

Curiously, *Burke* went on to say, "if, however, warnings to the trade, warnings apart from labels or packaging, limitation on sales to professionals, or other protections falling generally within the ambit of warnings should have been used when the content of the label was fixed by [the] EPA there remains a liability question for the trier of fact." *Id.* Plaintiffs cite this language, suggesting that this Court should find that an issue for the jury remains because, under *Burke*, Defendants could be accountable for warnings other than those covered by FIFRA's broad definition of label. However, Plaintiffs have not submitted any evidence to substantiate a claim that Defendants failed to warn them in any other way than by failing to adequately label their products. In the Defendants'

---

**3.** In light of our disposition that FIFRA expressly preempts state tort law actions based on failure to warn, we do not address implied preemption which has so occupied the analyses of the circuit and district courts deciding similar controversies before the Supreme Court's mandate in *Cipollone*.

 

Statement of Material Facts accompanying their Motion for Summary Judgment, it was stated that "[t]he plaintiffs contend that they were exposed to the above products and that the warnings *on* the defendants' products were inadequate giving rise to state law claims based on negligence and strict liability." Defs.' Statement of Material Facts Paragraph 2 (emphasis added). This Statement has been admitted by Plaintiffs foreclosing the argument that their claim encompasses warnings other than those contained in the products' labels which, as mentioned previously, are defined to include "the written, printed or graphic matter *on,* or attached to, the pesticide or device or any of its containers or wrappers." 7 U.S.C. § 136(p)(1) (emphasis added).[4]

Plaintiffs also point out that *Burke* and *Cipollone* suggest that state law damage actions may not be preempted if they are based on failure to fulfill an obligation to disclose material facts. These references would be persuasive if Plaintiffs asserted any claims based on fraudulent misrepresentation. Because Plaintiffs claims sound only in failure to warn, these references are misplaced.

## V. CONCLUSION

██ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because the language of FIFRA mandates the preemption of the establishment or enforcement or any common law duty that would impose a labeling requirement inconsistent with those established by the Act, or the EPA's regulations, Plain-

tiffs' common law failure to warn claims are preempted as a matter of law.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

SO ORDERED.

---

**4.** Although we do not rest our decision on this ground, we note our disagreement with the *Burke* Court's suggestion that common law damage actions for failure to warn may still lie for warnings that do not fall within the purview of FIFRA's labeling requirements. We can see no more effective way to warn potential users of the dangers of a product than by product labels. Therefore, we conclude that when Congress preempted the field of product labeling, it preempted all warning requirements in addition to or different from the label warnings required under FIFRA as well.