**Ernest L. KING, Sr., et al.,**
**Plaintiffs, Appellants,**

v.

**E.I. DUPONT DE NEMOURS AND**
**COMPANY, et al., Defendants,**
**Appellees.**

No. 92–2381.

United States Court of Appeals,
First Circuit.

Heard April 8, 1993.

Decided July 7, 1993.

James F. Freeley, III with whom James F. Freeley, Jr. and Freeley & Freeley, Boston, MA, were on brief, for plaintiffs, appellants.

George S. Isaacson with whom Peter D. Lowe, Brann & Isaacson, Lewiston, ME, Charles A. Harvey, Jr., Christopher D. Byrne, Verrill & Dana, Peter J. Rubin, Diane S. Lukac, and Bernstein, Shur, Sawyer & Nelson, Portland, ME, were on brief, for defendants, appellees.

Before BREYER, Chief Judge, FRIEDMAN,* Senior Circuit Judge, and STAHL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The issue in this case, on appeal from the United States District Court for the District of Maine, 806 F.Supp. 1030 (D.Me.1992), is whether the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y (1988), preempts state tort law claims based upon the alleged failure of the manufacturers of herbicides to provide adequate warning language on the products' labels, which the Environmental Protection Agency (EPA) approved in accordance with FIFRA's requirements. The district court held that FIFRA preempts those state law claims. We affirm.

I

The plaintiffs, King and Higgins (and their wives) filed this diversity tort damage suit against four manufacturers of chemical herbicides. Their second amended complaint alleged that, as part of their duties as employees of the State of Maine, King and Higgins were engaged in the "seasonal spraying of chemical herbicides"; that "[d]uring the chemical spraying operations [they] performed," King and Higgins "were exposed to significant amounts" of specified "chemical products" manufactured by the defendants; and that, "as the direct result of their exposure to the herbicides," King and Higgins have suffered various ailments.

The complaint contained two counts. Count I charged the defendants with negligence because they "failed to warn the Plaintiffs ... of the harm and danger of exposure to the chemical products listed above, failed to advise them how to safely use the products and failed to warn them of the long term, permanent physical injuries which would follow said exposure." Count II alleged strict liability and tort theories, based upon the defendants having "placed into the stream of commerce unreasonably dangerous and defective chemical products, rendered unreasonably dangerous by the absence of an ade-

* Of the Federal Circuit, sitting by designation.

quate warning to the ultimate consumers and users thereof of the short term and long term permanent physical injuries resulting from exposure thereto." At oral argument, the plaintiffs admitted that the sole basis of their complaint was the defendants' failure to provide adequate warnings.

The parties stipulated that the labels on all the herbicides involved had been submitted to and approved by the EPA, as FIFRA required.

The district court granted the defendants' motion for summary judgment, holding that FIFRA preempted the plaintiffs' claims. 806 F.Supp. at 1037. The court, following the preemption standards the Supreme Court applied in *Cipollone v. Liggett Group, Inc.*, — U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992), held:

> Because the language of FIFRA mandates the preemption of the establishment or enforcement or any common law duty that would impose a labeling requirement inconsistent with those established by the Act, or the EPA's regulations, Plaintiffs' common law failure to warn claims are preempted as a matter of law.

806 F.Supp. at 1037.

II

A. FIFRA provides a detailed scheme for regulating the content of an herbicide's label. All herbicides sold in the United States must be registered for use by the EPA. 7 U.S.C. § 136a(a). The EPA has promulgated comprehensive labeling requirements governing the scope, content, wording and format of herbicide labeling. 40 C.F.R. § 156 (1992). The manufacturer itself designs and formulates the content of the label, and must file with the EPA a statement which includes "the name of the pesticide," "a complete copy of the labeling of the pesticide, a statement of all claims to be made for it and any directions for its use," and "a full description of the tests made and the results thereof upon which the claims are based." 7 U.S.C. § 136a(c)(1)(B)–(D).

Section 136v provides in pertinent part:

(a) In general. A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity. Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

*Id.* § 136v.

B. *Cipollone* recently summarized the standards governing preemption analysis:

The purpose of Congress is the ultimate touchstone of preemption analysis.

Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.

*Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617 (citations and internal quotations omitted).

*Cipollone* involved similar preemption provisions of the federal statutes governing cigarette labelling and advertising. The suit concerned a woman who died of lung cancer after smoking for many years. It was a state tort law diversity suit against the cigarette manufacturers, charging them with responsibility for her death because, among other things, "they failed to warn consumers about the hazards of smoking." *Id.* at ——, 112 S.Ct. at 2613. The defendants contended that the Federal Cigarette Labelling and Advertising Act (1965 Act), Pub.L. No. 89–92, 79 Stat. 282 (1965) (codified as amended at 15 U.S.C. §§ 1331–1340 (1988)), and its successor, the Public Health Cigarette Smoking Act of 1969 (1969 Act), Pub.L. No. 91–222, 84 Stat. 87 (1969) (codified as amended at 15 U.S.C. §§ 1331–1340), preempted the claims. Those Acts required health warnings on cigarette packaging, but barred the requirement of such warnings in cigarette advertising.

Section 5 of the 1965 Act, captioned "Preemption," provided in relevant part:

(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

Federal Cigarette Labelling and Advertising Act, *quoted in Cipollone,* —— U.S. at ——, 112 S.Ct. at 2616.

The Court held that this provision "only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements and did not pre-empt state law damages actions." *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2619 (footnote omitted).

This provision was changed by the 1969 Act to read:

(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

Public Health Cigarette Smoking Act of 1969, *quoted in Cipollone,* —— U.S. at ——, 112 S.Ct. at 2616. *See also* 15 U.S.C. § 1334(b) (1988).

The Court held that this provision preempted the plaintiff's state law tort claims based on the defendants' failure to warn of the hazards of cigarette smoking. The Court stated that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2620. It, therefore, "reject[ed] petitioner's argument that the phrase 'requirement or prohibition' limits the 1969 Act's pre-emptive scope to positive enactments by legislatures and agencies." *Id.* The Court held that "insofar as claims under either failure to warn theory require a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted. The Act does not, however, pre-empt petitioner's claims that rely solely on respondents' testing or re-

search practices or other actions unrelated to advertising or promotion." *Id.* at —– —–, 112 S.Ct. at 2621–22.

Only four Justices joined in the portion of the opinion that held that the 1969 Act preempted the failure to warn tort claims. In his opinion concurring in the judgment in part and dissenting in part (in which Justice Thomas joined), however, Justice Scalia stated that he "agree[d]" with the following statements in the plurality opinion: "that 'the language of the [1969] Act plainly reaches beyond [positive] enactments,'; that the general tort-law duties petitioner invokes against the cigarette companies can, as a general matter, impose 'requirement[s] or prohibition[s]' within the meaning of § 5(b) of the 1969 Act; and that the phrase 'State law' as used in that provision embraces state common law." *Id.* at —–, 112 S.Ct. at 2634 (citations omitted). Justice Scalia also referred to the plurality opinion's "correct disposition of petitioner's post–1969 failure to warn claims." *Id.* at —–, 112 S.Ct. at 2637. Justice Scalia's partial disagreement with the plurality was that he would have held that the failure to warn claims under the 1965 Act and all of the claims under the 1969 Act were preempted. *Id.* at —–, 112 S.Ct. at 2632.

In these circumstances, the holding in the plurality opinion that the 1969 Act preempted the plaintiff's failure-to-warn claim fairly can be said to constitute the view of the Court because six members of the Court concurred in that conclusion. *See Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 370 n. 4 (7th Cir.1993).

The Supreme Court itself has indicated that *Cipollone* applies to FIFRA preemption determinations. In the *Papas v. Upjohn Co.* and *Arkansas–Platte* cases discussed below, the Court vacated two courts of appeals judgments that FIFRA impliedly preempted state law failure-to-warn claims and remanded for those courts to reconsider their decisions in light of *Cipollone.*

B. We hold that, in light of *Cipollone,* FIFRA preempts the plaintiffs' state law tort claims based on the defendants' alleged failure to provide adequate warnings about the health hazards of the herbicides they manufactured and sold.

The warnings on the labels of the herbicides King and Higgins used in spraying were approved by the EPA, as FIFRA required. If the plaintiffs could recover on their state law claims that, despite this labeling, the defendants had failed to provide adequate warning, those additional warnings necessarily would be "in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b). The question, therefore, is whether state law liability based upon such defective warning would constitute the "impos[ition]" by the state of "any requirements for labeling or packaging" under section 136v(b). *Id.*

*Cipollone* held that the words in the 1969 cigarette statute " '[n]o requirement or prohibition' ... easily encompass[ed] obligations that take the form of common law rules." *Cipollone,* —– U.S. at —–, 112 S.Ct. at 2620. The FIFRA language prohibiting the states from "impos[ing] or continu[ing] in effect any requirements," 7 U.S.C. § 136v(b), is virtually indistinguishable from the state-imposed "requirement" language that *Cipollone* held preempted the state common law tort claims based on inadequate warning. FIFRA's language, too, preempts the state law lack-of-warning claims involved in this case.

The plaintiffs contend that the reference in section 136v(b) to "Such State" means the state described in subsection (a), namely, a state that has "regulate[d] the sale or use of any federally registered pesticide." From this, they conclude that the prescription provision of subsection (b) covers only state regulation, but not state common law claims. Subsection (a), however, is a grant of authority to the states to regulate the "sale or use" of pesticides, not a limitation upon the preemptive effect of subsection (b). The word "Such" in subsection (b) does not limit to state regulation the state "requirements for labeling or packaging" which that section preempts.

The legislative history of the 1972 amendments to FIFRA, which added section 136v to the statute, supports our conclusion. The Senate Committee Report on the provision

stated that section 136v(b) "preempts any State or local government labeling or packaging requirements differing from such requirements under the Act." S.Rep. No. 92–970, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4092, 4128. *See also* S.Rep. No. 92–838, 92d Cong., 2d Sess. 30 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4021 (the provision "preempts any State labeling or packaging requirements differing from such requirements under the Act"). The House Committee Report stated: "[i]n dividing the responsibility between the States and the Federal Government for the management of an effective pesticide program, the Committee has adopted language which is intended to completely preempt State authority in regard to labeling and packaging." H.R.Rep. No. 92–511, 92d Cong., 2nd Sess. 16 (1971), U.S.Code Cong. & Admin.News 1972, p. 3993.

Our conclusion accords with the decisions of the three courts of appeals that, since *Cipollone*, have decided the question.

In *Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir.1991), the court held that FIFRA impliedly preempted state common law claims based upon inadequate labeling. On petition for certiorari, the Supreme Court vacated the court of appeals' judgment and remanded the case for further consideration in light of *Cipollone*. *Papas v. Zoecon Corp.*, —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). On remand the court of appeals concluded that "FIFRA expressly preempts state common law actions against manufacturers of EPA-registered pesticides to the extent that such actions are predicated on claims of inadequate labeling or packaging." *Papas v. Upjohn Co.*, 985 F.2d 516, 520 (11th Cir.1993). The court stated:

> Section 136v(b) pre-empts those of the Papases' state law claims which constitute "requirements for labeling or packaging in addition to or different from" the labelling and packaging requirements imposed under FIFRA. *Cipollone* convinces us that the term "requirements" in section 136v(b) "sweeps broadly and suggests no distinc-

tion between positive enactments and the common law." *Cipollone* [—— U.S.], at ——, 112 S.Ct. at 2620. Common law damages awards are one form of state regulation and, as such, are "requirements" within the meaning of section 136v. To the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's "labeling or packaging" failed to meet a standard "in addition to or different from" FIFRA requirements, section 136v preempts the claims.

*Id.* at 518 (citation omitted).

In *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 959 F.2d 158 (10th Cir.1992), the court also held that "state tort actions based on labeling and alleged failure · to warn are impliedly preempted by FIFRA as a matter of law." *Id.* at 164. On petition for certiorari the Supreme Court vacated the judgment of the court of appeals and remanded for that court to reconsider the case in light of *Cipollone*. *Arkansas–Platte & Gulf Partnership v. Dow Chemical Co.*, —— U.S. ——, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992). On remand the court "ADHERE[D] to the opinion previously announced." *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir.1993), *petition for cert. filed*, 61 U.S.L.W. 3789 (U.S. May 10, 1993) (No. 92–1784). The Court stated:

> [T]he common law duty is no less a "requirement" in the preemption scheme than a state statute imposing the same burden. . . . [T]he common law duty to warn is subjected to the same federal preemptive constraints as a state statute. . . . To the extent that state tort claims in this case require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FIFRA, they would be expressly preempted.

*Id.*

In *Shaw*, 994 F.2d 364, the Seventh Circuit held that FIFRA preempted a state law claim based on failure-to-warn of the dangers

of a chemical stain remover. The court stated:

> In order to succeed in the wake of *Cipollone*, then, Shaw would have to show that FIFRA's preemption language is less sweeping than the language of the 1969 Cigarette Act. Yet we can discern no significant distinction at all—FIFRA says that "[s]uch State shall not impose * * * any requirements for labeling or packaging in addition to or different from those required * * *," while the cigarette law says "[n]o requirement[s] or prohibition[s] * * * imposed under State law" shall be permitted. Both seem equally emphatic: "[n]o requirements or prohibitions" is just another way of saying a "[s]tate shall not impose * * * any requirements." Not even the most dedicated hair-splitter could distinguish these statements. If common law actions cannot survive under the 1969 cigarette law, then common law actions for labeling and packaging defects cannot survive under FIFRA.

*Id.* at 371.

C. The plaintiffs rely on *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). There, the plaintiff became ill and died as a result of his exposure to an herbicide he sprayed. In affirming a jury verdict for the plaintiff, the court held that FIFRA did not preempt the plaintiff's state law tort claims based upon the inadequacy of the warning labels on the herbicide. The court reasoned that "Chevron can comply with both federal and state law by continuing to use the EPA-approved label and by simultaneously paying damages to successful tort plaintiffs such as Mr. Ferebee." *Id.* at 1541.

In deciding *Ferebee,* the District of Columbia Circuit did not have the benefit of the Supreme Court's subsequent analysis and ruling in *Cipollone.* It is impossible to predict whether, in light of *Cipollone* and the other courts of appeals' decisions discussed above, the District of Columbia Circuit would continue to follow *Ferebee.* In any event, for the reasons set forth in this opinion, we do not find *Ferebee* persuasive.

*Affirmed.*