UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2381

ERNEST L. KING, SR., ET AL.,

Plaintiffs, Appellants,

v.

E.I. DUPONT DE NEMOURS AND COMPANY, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Breyer, Chief Judge,

Friedman,* Senior Circuit Judge,

and Stahl, Circuit Judge.

James F. Freeley, III with whom James F. Freeley, Jr. and Freeley

& Freeley were on brief for appellants.

George S. Isaacson with whom Peter D. Lowe, Brann & Isaacson,

Charles A. Harvey, Jr., Christopher D. Byrne, Verrill & Dana, Peter J.

Rubin, Diane S. Lukac, and Bernstein, Shur, Sawyer & Nelson were on

brief for appellees.

July 7, 1993

*Of the Federal Circuit, sitting by designation.

FRIEDMAN, Senior Circuit Judge. The issue in this case, on

appeal from the United States District Court for the District of

Maine, 806 F. Supp. 1030 (D. Me. 1992), is whether the

Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) , 7

U.S.C. 136-136y (1988), preempts state tort law claims based

upon the alleged failure of the manufacturers of herbicides to

provide adequate warning language on the products' labels, which

the Environmental Protection Agency (EPA) approved in accordance

with FIFRA's requirements. The district court held that FIFRA

preempts those state law claims. We affirm.

I

The plaintiffs, King and Higgins (and their wives)

filed this diversity tort damage suit against four manufacturers

of chemical herbicides. Their second amended complaint alleged

that, as part of their duties as employees of the State of Maine,

King and Higgins were engaged in the "seasonal spraying of

chemical herbicides"; that "[d]uring the chemical spraying

operations [they] performed," King and Higgins "were exposed to

significant amounts" of specified "chemical products"

manufactured by the defendants; and that, "as the direct result

of their exposure to the herbicides," King and Higgins have

suffered various ailments.

The complaint contained two counts. Count I charged

the defendants with negligence because they "failed to warn the

Plaintiffs . . . of the harm and danger of exposure to the

chemical products listed above, failed to advise them how to

-2-
2

safely use the products and failed to warn them of the long term,

permanent physical injuries which would follow said exposure."

Count II alleged strict liability and tort theories, based upon

the defendants having "placed into the stream of commerce

unreasonably dangerous and defective chemical products, rendered

unreasonably dangerous by the absence of an adequate warning to

the ultimate consumers and users thereof of the short term and

long term permanent physical injuries resulting from exposure

thereto." At oral argument, the plaintiffs admitted that the

sole basis of their complaint was the defendants' failure to

provide adequate warnings.

The parties stipulated that the labels on all the

herbicides involved had been submitted to and approved by the

EPA, as FIFRA required.

The district court granted the defendants' motion

for summary judgment, holding that FIFRA preempted the

plaintiffs' claims. 806 F. Supp. at 1037. The court, following

the preemption standards the Supreme Court applied in Cipollone

v. Liggett Group, Inc., 112 S. Ct. 2608, 2617 (1992), held:

Because the language of FIFRA
mandates the preemption of the
establishment or enforcement
or any common law duty that
would impose a labeling
requirement inconsistent with
those established by the Act,
or the EPA's regulations,
Plaintiffs' common law failure
to warn claims are preempted
as a matter of law.
806 F. Supp. at 1037.

II

-3-
3

A. FIFRA provides a detailed scheme for regulating

the content of an herbicide's label. All herbicides sold in the

United States must be registered for use by the EPA. 7 U.S.C.

136a(a). The EPA has promulgated comprehensive labeling

requirements governing the scope, content, wording and format of

herbicide labeling. 40 C.F.R. 156 (1992). The manufacturer

itself designs and formulates the content of the label, and must

file with the EPA a statement which includes "the name of the

pesticide," "a complete copy of the labeling of the pesticide, a

statement of all claims to be made for it and any directions for

its use," and "a full description of the tests made and the

results thereof upon which the claims are based." 7 U.S.C.

136a(c)(1)(B)-(D).

Section 136v provides in pertinent part:

(a) In general. A State may
regulate the sale or use of
any federally registered
pesticide or device in the
State, but only if and to the
extent the regulation does not
permit any sale or use
prohibited by this subchapter.

(b) Uniformity. Such State
shall not impose or continue
in effect any requirements for
labeling or packaging in
addition to or different from
those required under this
subchapter.

Id. 136v.

B. Cipollone recently summarized the standards

governing preemption analysis:

-4-
4

The purpose of Congress is the
ultimate touchstone of pre-
emption analysis.

Congress' intent may be
explicitly stated in the
statute's language or
implicitly contained in its
structure and purpose. In the
absence of an express
congressional command, state
law is pre-empted if that law
actually conflicts with
federal law, or if federal law
so thoroughly occupies a
legislative field as to make
reasonable the inference that
Congress left no room for the
States to supplement it.

Cipollone, 112 S. Ct. at 2617 (citations and internal quotations

omitted).

Cipollone involved similar preemption provisions of

the federal statutes governing cigarette labelling and

advertising. The suit concerned a woman who died of lung cancer

after smoking for many years. It was a state tort law diversity

suit against the cigarette manufacturers, charging them with

responsibility for her death because, among other things, "they

failed to warn consumers about the hazards of smoking." Id. at

2613. The defendants contended that the Federal Cigarette

Labelling and Advertising Act (1965 Act), Pub. L. No. 89-92, 79

Stat. 282 (1965) (codified as amended at 15 U.S.C. 1331-1340

(1988)), and its successor, the Public Health Cigarette Smoking

Act of 1969 (1969 Act), Pub. L. No. 91-222, 84 Stat. 87 (1969)

(codified as amended at 15 U.S.C. 1331-1340), preempted the

claims. Those Acts required health warnings on cigarette

-5-
5

packaging, but barred the requirement of such warnings in

cigarette advertising.

Section 5 of the 1965 Act, captioned "Preemption,"

provided in relevant part:

(b) No statement relating to
smoking and health shall be
required in the advertising of
any cigarettes the packages of
which are labeled in
conformity with the provisions
of this Act.

Federal Cigarette Labelling and Advertising Act, quoted in

Cipollone, 112 S. Ct. at 2616.

The Court held that this provision "only pre-empted

state and federal rulemaking bodies from mandating particular

cautionary statements and did not pre-empt state law damages

actions." Cipollone, 112 S. Ct. at 2619 (footnote omitted).

This provision was changed by the 1969 Act to read:

(b) No requirement or
prohibition based on smoking
and health shall be imposed
under State law with respect
to the advertising or
promotion of any cigarettes
the packages of which are
labeled in conformity with the
provisions of this Act.

Public Health Cigarette Smoking Act of 1969, quoted in Cipollone,

112 S. Ct. at 2616. See also 15 U.S.C. 1334(b) (1988).

The Court held that this provision preempted the

plaintiff's state law tort claims based on the defendants'

failure to warn of the hazards of cigarette smoking. The Court

stated that "[t]he phrase '[n]o requirement or prohibition'

-6-
6

sweeps broadly and suggests no distinction between positive

enactments and common law; to the contrary, those words easily

encompass obligations that take the form of common law rules."

Cipollone, 112 S. Ct. at 2620. It, therefore, "reject[ed]

petitioner's argument that the phrase 'requirement or

prohibition' limits the 1969 Act's pre-emptive scope to positive

enactments by legislatures and agencies." Id. The Court held

that "insofar as claims under either failure to warn theory

require a showing that respondents' post-1969 advertising or

promotions should have included additional, or more clearly

stated, warnings, those claims are pre-empted. The Act does not,

however, pre-empt petitioner's claims that rely solely on

respondents' testing or research practices or other actions

unrelated to advertising or promotion." Id. at 2621-22.

Only four Justices joined in the portion of the

opinion that held that the 1969 Act preempted the failure to warn

tort claims. In his opinion concurring in the judgment in part

and dissenting in part (in which Justice Thomas joined), however,

Justice Scalia stated that he "agree[d]" with the following

statements in the plurality opinion: "that 'the language of the

[1969] Act plainly reaches beyond [positive] enactments,'; that

the general tort-law duties petitioner invokes against the

cigarette companies can, as a general matter, impose

'requirement[s] or prohibition[s]' within the meaning of 5(b)

of the 1969 Act; and that the phrase 'State law' as used in that

provision embraces state common law." Id. at 2634 (citations

-7-
7

omitted). Justice Scalia also referred to the plurality

opinion's "correct disposition of petitioner's post-1969 failure

to warn claims." Id. at 2637. Justice Scalia's partial

disagreement with the plurality was that he would have held that

the failure to warn claims under the 1965 Act and all of the

claims under the 1969 Act were preempted. Id. at 2632.

In these circumstances, the holding in the plurality

opinion that the 1969 Act preempted the plaintiff's failure-to-

warn claim fairly can be said to constitute the view of the Court

because six members of the Court concurred in that conclusion.

See Shaw v. Dow Brands, Inc., No. 92-2323, 1993 WL 166324, at *6

n.4 (7th Cir. May 18, 1993).

The Supreme Court itself has indicated that

Cipollone applies to FIFRA preemption determinations. In the

Papas v. Upjohn Co. and Arkansas-Platte cases discussed below,

the Court vacated two courts of appeals judgments that FIFRA

impliedly preempted state law failure-to-warn claims and remanded

for those courts to reconsider their decisions in light of

Cipollone.

B. We hold that, in light of Cipollone, FIFRA

preempts the plaintiffs' state law tort claims based on the

defendants' alleged failure to provide adequate warnings about

the health hazards of the herbicides they manufactured and sold.

The warnings on the labels of the herbicides King

and Higgins used in spraying were approved by the EPA, as FIFRA

required. If the plaintiffs could recover on their state law

-8-
8

claims that, despite this labeling, the defendants had failed to

provide adequate warning, those additional warnings necessarily

would be "in addition to or different from those required under

this subchapter." 7 U.S.C. 136v(b). The question, therefore,

is whether state law liability based upon such defective warning

would constitute the "impos[ition]" by the state of "any

requirements for labeling or packaging" under section 136v(b).

Id.

Cipollone held that the words in the 1969 cigarette

statute "'[n]o requirement or prohibition' . . . easily

encompass[ed] obligations that take the form of common law

rules." Cipollone, 112 S. Ct. at 2620. The FIFRA language

prohibiting the states from "impos[ing] or continu[ing] in effect

any requirements," 7 U.S.C. 136v(b), is virtually

indistinguishable from the state-imposed "requirement" language

that Cipollone held preempted the state common law tort claims

based on inadequate warning. FIFRA's language, too, preempts the

state law lack-of-warning claims involved in this case.

The plaintiffs contend that the reference in section

136v(b) to "Such State" means the state described in subsection

(a), namely, a state that has "regulate[d] the sale or use of any

federally registered pesticide." From this, they conclude that

the prescription provision of subsection (b) covers only state

regulation, but not state common law claims. Subsection (a),

however, is a grant of authority to the states to regulate the

"sale or use" of pesticides, not a limitation upon the preemptive

-9-
9

effect of subsection (b). The word "Such" in subsection (b) does

not limit to state regulation the state "requirements for

labeling or packaging" which that section preempts.

The legislative history of the 1972 amendments to

FIFRA, which added section 136v to the statute, supports our

conclusion. The Senate Committee Report on the provision stated

that section 136v(b) "preempts any State or local government

labeling or packaging requirements differing from such

requirements under the Act." S. Rep. No. 92-970, 92d Cong., 2d

Sess. (1972), reprinted in 1972 U.S.C.C.A.N. 4092, 4128. See

also S. Rep. No. 92-838, 92d Cong., 2d Sess. 30 (1972), reprinted

in 1972 U.S.C.C.A.N. 3993, 4021 (the provision "preempts any

State labeling or packaging requirements differing from such

requirements under the Act"). The House Committee Report stated:

"[i]n dividing the responsibility between the States and the

Federal Government for the management of an effective pesticide

program, the Committee has adopted language which is intended to

completely preempt State authority in regard to labeling and

packaging." H.R. Rep. No. 92-511, 92d Cong., 1st Sess. 16

(1971).

Our conclusion accords with the decisions of the

three courts of appeals that, since Cipollone, have decided the

question.

In Papas v. Upjohn Co., 926 F.2d 1019 (11th Cir.

1991), the court held that FIFRA impliedly preempted state common

law claims based upon inadequate labeling. On petition for

-10-
10

certiorari, the Supreme Court vacated the court of appeals'

judgment and remanded the case for further consideration in light

of Cipollone. Papas, 112 S. Ct. 3020 (1992). On remand the

court of appeals concluded that "FIFRA expressly preempts state

common law actions against manufacturers of EPA-registered

pesticides to the extent that such actions are predicated on

claims of inadequate labeling or packaging." Papas, 985 F.2d

516, 520 (11th Cir. 1993). The court stated:

Section 136v(b) pre-empts
those of the Papases' state
law claims which constitute
"requirements for labeling or
packaging in addition to or
different from" the labelling
and packaging requirements
imposed under FIFRA.
Cipollone convinces us that

the term "requirements" in
section 136v(b) "sweeps
broadly and suggests no
distinction between positive
enactments and the common
law." Cipollone, at , 112

S.Ct. at 2620. Common law
damages awards are one form of
state regulation and, as such,
are "requirements" within the
meaning of section 136v. To
the extent that state law
actions for damages depend
upon a showing that a
pesticide manufacturer's
"labeling or packaging" failed
to meet a standard "in
addition to or different from"
FIFRA requirements, section
136v pre-empts the claims.

Id. at 518 (citation omitted).

In Arkansas-Platte & Gulf Partnership v. Van Waters

& Rogers, Inc., 959 F.2d 158 (10th Cir. 1992), the court also

-11-
11

held that "state tort actions based on labeling and alleged

failure to warn are impliedly preempted by FIFRA as a matter of

law." Id. at 164. On petition for certiorari the Supreme Court

vacated the judgment of the court of appeals and remanded for

that court to reconsider the case in light of Cipollone.

Arkansas-Platte, 113 S. Ct. 314 (1992). On remand the court

"ADHERE[D] to the opinion previously announced." Arkansas-

Platte, 981 F.2d 1177, 1179 (10th Cir. 1993), petition for cert.

filed, 61 U.S.L.W. 3789 (U.S. May 10, 1993) (No. 92-1784). The

Court stated:

[T]he common law duty is no
less a "requirement" in the
preemption scheme than a state
statute imposing the same
burden. . . . [T]he common
law duty to warn is subjected
to the same federal preemptive
constraints as a state
statute. . . . To the extent
that state tort claims in this
case require a showing that
defendants' labeling and
packaging should have included
additional, different, or
alternatively stated warnings
from those required under
FIFRA, they would be expressly
preempted.

Id.

In Shaw, 1993 WL 166324, the Seventh Circuit held

that FIFRA preempted a state law claim based on failure-to-warn

of the dangers of a chemical stain remover. The court stated:

In order to succeed in the
wake of Cipollone, then, Shaw

would have to show that
FIFRA's pre-emption language
is less sweeping than the

-12-
12

language of the 1969 Cigarette
Act. Yet we can discern no
significant distinction at
all--FIFRA says that "[s]uch
State shall not impose * * *
any requirements for labeling
or packaging in addition to or
different from those required
* * *," while the cigarette
law says "[n]o requirement[s]
or prohibition[s] * * *
imposed under State law" shall
be permitted. Both seem
equally emphatic: "[n]o
requirements or prohibitions"
is just another way of saying
a "[s]tate shall not impose
* * * any requirements." Not
even the most dedicated hair-
splitter could distinguish
these statements. If common
law actions cannot survive
under the 1969 cigarette law,
then common law actions for
labeling and packaging defects
cannot survive under FIFRA.

Id. at *6.

C. The plaintiffs rely on Ferebee v. Chevron

Chemical Co., 736 F.2d 1529 (D.C. Cir.), cert. denied, 469 U.S.

1062 (1984). There, the plaintiff became ill and died as a

result of his exposure to an herbicide he sprayed. In affirming

a jury verdict for the plaintiff, the court held that FIFRA did

not preempt the plaintiff's state law tort claims based upon the

inadequacy of the warning labels on the herbicide. The court

reasoned that "Chevron can comply with both federal and state law

by continuing to use the EPA-approved label and by simultaneously

paying damages to successful tort plaintiffs such as Mr.

Ferebee." Id. at 1541.

-13-
13

In deciding Ferebee, the District of Columbia

Circuit did not have the benefit of the Supreme Court's

subsequent analysis and ruling in Cipollone. It is impossible to

predict whether, in light of Cipollone and the other courts of

appeals' decisions discussed above, the District of Columbia

Circuit would continue to follow Ferebee. In any event, for the

reasons set forth in this opinion, we do not find Ferebee

persuasive.

Affirmed.

-14-
14