**Alma JILLSON and Robert Jillson, Plaintiffs,**

v.

**VERMONT LOG BUILDINGS, INC., Defendant,**

v.

**DAP, INC., Third–Party Defendant.**

**Civ. A. No. 91–30098–MAP.**

United States District Court, D. Massachusetts.

July 22, 1994.

Jeffrey L. McCormick, Robinson, Donovan, Madden & Barry, Springfield, MA, for plaintiffs.

Lawrence F. Boyle, W. Joseph Flanagan, Morrison, Mahoney & Miller, Boston, MA, for defendant.

Katherine E. Perrelli, Day, Berry & Howard, Boston, MA, Philip S. Walker, Day, Berry & Howard, Hartford, CT, for third-party defendant.

## MEMORANDUM REGARDING THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(Docket No. 24)

PONSOR, District Judge.

## I. INTRODUCTION.

In 1982 the plaintiff Alma Jillson purchased a log home. The sellers of the home had purchased it from the defendant Vermont Log Builders, Inc. ("Vermont Log"), in 1979.[1] The component logs of this home had been treated with a product called "Woodlife," which contained the chemical pentachlorophenol ("PCP").

Three years later, Jillson developed a rash on her face, which her doctor determined was caused by Woodlife. She vacated the house and sued Vermont Log under various state common law and statutory theories. Vermont Log brought a third-party action against DAP, Inc. ("DAP"), the manufacturer of Woodlife, seeking indemnity and contribution.

DAP has now moved for summary judgment, arguing that Vermont Log's claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136. For the reasons set forth below, DAP's motion will be allowed in part and denied in part.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

Jillson sued Vermont Log on June 7, 1990, for negligence, breach of warranty and violation of the Massachusetts consumer protection statute, Mass.Gen.L. ch. 93A, claiming that her exposure to PCP in the log home supplied by defendant caused her injury. Vermont Log impleaded the manufacturer of Woodlife—DAP, Inc.—as a third-party defendant, claiming DAP negligently designed and manufactured Woodlife, negligently failed to warn of the dangers of the product and breached both its express and implied warranties of merchantability and fitness for a particular purpose.

Prior to September, 1975, DAP's label on Woodlife was approved by the EPA, pursuant to FIFRA. The EPA-approved label contained no warning of possible dangers posed by living in a house treated with Woodlife. After May 1978, DAP or its predecessor amended the label to caution against its use on unfinished interior services.

Third-party defendant DAP removed this case to district court, and has now moved for summary judgment pursuant to Fed.R.Civ.P. 56. DAP claims that Vermont Log's state claims all relate to the allegedly inadequate

---

1. Robert Jillson is also a plaintiff, suing for loss of consortium. For simplicity, Alma Jillson will be referred to as "plaintiff" in this memorandum.

labelling of Woodlife. Since the Woodlife label was approved by the EPA as required by FIFRA, DAP argues that Vermont Log's state law claims are preempted. *See* 7 U.S.C. § 136v(b) (1988). Vermont Log contends, first, that DAP waived the preemption issue by failing to plead it and, second, that its claims are not preempted by FIFRA in any event.

The motion before the court involves only third-party plaintiff Vermont Log and third-party defendant DAP. The issue is whether FIFRA preempts the state law claims of breach of express and implied warranty, negligent design, negligent manufacture and improper labelling. The court must also rule on the question of whether DAP's failure explicitly to plead preemption has cost it this affirmative defence.

### III. SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding this case, the court will view all facts in the light most favorable to the non-moving party, here third-party plaintiff DAP, and will indulge all reasonable inferences in its favor. *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir 1989). Defendant Vermont Log first must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Quintero de Quintero v. Aponte–Roque,* 974 F.2d 226, 227–28 (1st Cir. 1992). If defendant is successful, DAP must then "set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)).

### IV. DISCUSSION.

#### A. *Waiver*

■ Vermont Log asserts that the preemption defense has been waived, since it was not affirmatively pleaded in DAP's answer to the third-party complaint. According-

ing to Vermont Log, DAP's failure to offer any excuse as to why this affirmative defense was not previously pleaded makes it improper for the court to allow DAP to add this defense by amendment now.

In view of the liberal federal pleading rules, the crucial consideration in determining the appropriateness of an amendment to the answer is whether the third-party plaintiff would be prejudiced. *See, e.g., Kennan v. Dow Chemical Co.,* 717 F.Supp. 799, 808 (M.D.Fla.1989) (citing *Hassan v. U.S. Postal Service,* 842 F.2d 260 (11th Cir.1988)); Fed. R.Civ.P. 15(b).

Here, Vermont Log does not argue that it would be prejudiced if DAP were allowed to amend its answer. Moreover, it does not appear that Vermont Log would be; as DAP points out, preemption has long been an issue in this case. Vermont Log cannot reasonably be surprised at DAP's articulation of the preemption defense, since preemption was raised in a case nearly identical to this one, involving both Vermont Log and DAP, and litigated by the same attorneys. *See Grenier v. Vermont Log Builders, Inc. v. DAP, Inc.,* No. 91–40115 (D.Mass.1994). Furthermore, as in *Kennan,* "the availability of the preemption defense in this case is a matter of law, and there is no issue on which plaintiffs could conduct discovery which would alter [this court's] finding of preemption." *Id.* at 810. In light of the foregoing, this court holds that preemption has not been waived as an affirmative defense. This holding is contingent upon DAP filing a motion for leave to amend its answer to the third-party complaint, with the proposed amendment, within ten (10) days of the date of this memorandum.

#### B. *Preemption*

Unquestionably, FIFRA does preempt some of Vermont Log's state law claims. The *extent* of the preemption is the issue.

"The purpose of Congress is the ultimate touchstone" of preemption analysis. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978) (*quoting Retail Clerks v. Schermerhorn,* 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)).

"Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Cipollone v. Liggett Group, Inc., et al.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (*quoting Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)).

> In the absence of express congressional command, state law is preempted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.

*Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617 (citations omitted).

The Supreme Court's *Cipollone* decision provides a good starting point for discussion of preemption. In *Cipollone,* a woman died from smoking-induced lung cancer. Plaintiff sued the cigarette manufacturers alleging a variety of tort claims, including negligent and defective design and manufacture and failure to warn, as well as breach of warranty. The defendant responded that plaintiff's claims were preempted by the Federal Cigarette Labelling and Advertising Act of 1965, § 5, as amended by the Public Health Cigarette Smoking Act of 1969, § 2, 15 U.S.C. § 1334. The statute at issue regulated the labeling of cigarette packages. The presence of an *express* preemption provision was noted by the Court as evidence that there was no implied preemption in this statute. *Id.* at ——, 112 S.Ct. at 2618. The Court, in a divided decision, analyzed each of plaintiff's claims in light of this express statutory provision.

Since the Acts of 1965 and 1969 dealt with the advertising and promotion of cigarettes, all claims relating to or stemming from advertising or promotion were found to be preempted. The plurality also held that breach of express warranty, intentional fraud and misrepresentation, and conspiracy claims were *not* preempted. A 7–2 majority found state law damage claims not to be preempted for three reasons: first, there was a presumption against preemption of state police-power regulations; second, the health warning the Act required did not foreclose additional state law obligations; and, finally, there was no conflict between federally mandated warnings and the "continued vitality of state common law damages actions." *Cipollone* at ——, 112 S.Ct. at 2618.

The First Circuit interpreted *Cipollone* in *King v. Collagen Corp.,* 983 F.2d 1130 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). In *Collagen,* plaintiff brought suit against the manufacturer of a cosmetic medical device used to correct skin disfigurements, asserting state claims for failure to warn and for fraud by defendant in obtaining FDA approval of the product and its label. The court of appeals found that all plaintiff's claims were preempted by the FDA regulations under the Medical Device Amendments of 1976 (MDA), 21 U.S.C. §§ 360c *et seq.* As the Supreme Court did in *Cipollone,* the First Circuit in *Collagen* relied solely upon the express preemption provisions of the statute to determine the extent of preemption. The statute's preemption provisions provided that:

> [S]tates may not establish or continue in effect with respect to any device intended for human use any requirement (1) which is different from or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

The FDA had issued regulations relating to labeling, design, manufacturing and other aspects of the medical device pursuant to the MDA. *Collagen,* 983 F.2d at 1134.

The First Circuit found that strict state liability claims would impose requirements relating to the safety and effectiveness of the product "Zyderm." Since the FDA had already imposed safety and effectiveness regulations on Zyderm pursuant to the MDA, the strict liability claims were preempted. *Id.* at 1135.

The plaintiff's breach of warranty claims in *Collagen* were also preempted because they arose from the labeling and packaging of the product. Honoring those claims would impose requirements in addition to or different

from the MDA requirements. The court noted that breach of warranty claims were not preempted in *Cipollone*, but determined that the MDA was different. *Id.* The statute in *Cipollone* required only a brief health warning. Beyond that, cigarette manufacturers were free to make warranty claims or not, as they saw fit. *Cipollone* was distinguishable from *Collagen* because the preemption provision in the MDA, precluding "any" safety or effectiveness regulation of medical devices, swept more broadly than the Cigarette Act provision, which had precluded only health related labeling regulations. *Id.*

Plaintiff's negligence claims were also preempted in *Collagen.* Plaintiff alleged negligent design, manufacture, marketing and sale of Zyderm. The MDA extensively regulated the labeling and packaging of Zyderm, which directly affected its manufacture, marketing and sale. Thus, the First Circuit concluded that the negligence claims were also preempted. Product misbranding, misrepresentation and failure to warn were preempted for the same reason: the MDA extensively regulated the labeling and packaging of medical devices. A state fraud claim (which failed for other reasons) was preempted because it was "at bottom, a failure to warn claim," and thus was expressly preempted by the MDA. *Id.* at 1136.

The FIFRA preemption clause, at issue in this case and codified at 7 U.S.C. § 136v(b), states: "[A] State shall not impose or continue in effect any requirements for the labeling or packaging in addition to or different from those required under this subchapter." The breadth of this provision has been interpreted differently in different circuits, but, facially, it appears to be much less broad than the MDA preemption provision at issue in *Collagen.* The MDA preempts *any* state requirements relating to the safety and effectiveness of a medical device. 21 U.S.C. § 360k(a). In contrast, FIFRA's preemption applies *only* to "requirements for the labeling or packaging" of insecticides, fungicides, or rodenticides. 7 U.S.C. § 136v(b).

This distinction is crucial. As the Supreme Court did in *Cipollone*, this court will focus on FIFRA's express preemption provision and will construe the presence of express statutory preemption to mean that matters outside the scope of this provision are not preempted. *See Cipollone* —— U.S. at ——, 112 S.Ct. at 2618.

The Eleventh Circuit first interpreted FIFRA in the post-*Cipollone* era in *Papas v. Upjohn Co. ("Papas II")*, 985 F.2d 516 (11th Cir.1993). The original *Papas* decision ("Papas I"), 926 F.2d 1019 (11th Cir.1991), was remanded by the Supreme Court in *Papas v. Zoecon Corp.*, —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). *Papas II* held that *any* claims related to *labeling* were preempted by FIFRA. 985 F.2d at 519. This included state tort claims of negligence and strict liability, which plaintiffs conceded were ultimately predicated in part on manufacturer's failure to warn. *Id.* at 518.

In addition to failure to warn claims, *Papas II* addressed plaintiff's claims for breach of express and implied warranty. The court found that express warranties were *not* preempted by FIFRA, because they were not imposed under state law. FIFRA preempts *states* from imposing requirements "in addition to or different from [FIFRA's]." 7 U.S.C. § 136v(b). Express warranties, on the other hand, are duties imposed by manufacturers upon *themselves.* *Cipollone* —— U.S. at ——, 112 S.Ct. at 2622. "In contrast, implied warranties of merchantability arise by operation of law." *Id.* (citations omitted). The *Papas II* court noted that "where plaintiffs argue that an implied warranty obligates the seller, plaintiffs acknowledge that the seller did not volunteer for the liability." *Papas II*, 985 F.2d at 520. Thus, since the state was imposing a requirement on defendants involving the labeling of their FIFRA product, the *implied* warranty claim was preempted to the extent that the claim depended on inadequacies in labeling. *Id. See also Mendes v. Medtronic, Inc.*, 18 F.3d 13, 18 (1st Cir.1994) (implied warranties preempted in MDA case).

The Tenth Circuit interpreted FIFRA preemption subsequent to *Cipollone* in *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc., ("Platte II")*, 981 F.2d 1177 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993). As with *Papas*, the original *Platte* decision, 959 F.2d

158 (10th Cir.1992), ("*Platte I*"), had been vacated and remanded in light of *Cipollone*.

This case arose when a landowner sued a chemical manufacturer for failure to warn of potential environmental hazards to property posed by the chemical. The Tenth Circuit concluded that FIFRA preempted state tort claims to the extent that they were based on inadequate labeling of any description. This conclusion was anchored on the 10th Circuit's sense that the FIFRA preemption provision, 7 U.S.C. § 136v(b), was substantially similar to the preemption provision of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1334(b), at issue in *Cipollone*. Where the Cigarette Smoking Act provided that "[n]o requirement or prohibition ... shall be imposed under State law with respect to the advertising or promotion of cigarettes," FIFRA provides that states may not impose "any requirement for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b).

The court found that FIFRA's "any requirement" phrase swept as broadly as the Cigarette Act's "no requirement" language, and thus provided a "reliable indicium of congressional intent with respect to state authority." *Platte II*, 981 F.2d at 1179 (citing *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618). Claims for breach of the common law duty to warn were preempted by FIFRA, because they imposed an affirmative duty on chemical producers to label their products in such a way as to provide a warning. Any state tort claims that would have required a showing that the chemical manufacturer should have labeled its product differently, alternatively, or to a greater extent than it did were expressly preempted by FIFRA.

The Seventh Circuit interpreted post-*Cipollone* FIFRA preemption in *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir.1993), holding that plaintiff's state law claims of negligence and common law strict liability for failure to warn were preempted. In light of *Cipollone*, a plaintiff seeking to avoid FIFRA preemption would have to show that FIFRA's preemption clause swept less broadly than the Cigarette Act's preemption clause at issue in *Cipollone*. The *Shaw* court noted

that "not even the most dedicated hair splitter" could distinguish FIFRA's preemption clause from that of the Cigarette Act. *Id.* at 371. Thus, the negligence and strict liability claims, which were found to be related to labeling and packaging, were preempted.

The most recent interpretation of FIFRA preemption is *King v. E.I. Du Pont De Nemours and Co.*, 996 F.2d 1346 (1st Cir.1993). In *King*, the First Circuit found that FIFRA preempted state tort law claims based on an herbicide manufacturer's failure to warn of dangers of exposure on its product's label. Like the *Papas II*, *Platte II*, and *Shaw* courts, the *King* court found that any state tort claim arising from alleged inadequacy of labeling was expressly preempted by FIFRA. *King* reiterated the position that a common law duty is no less a "requirement" within the meaning of FIFRA preemption than a state statute imposing the same burden. *King*, 996 F.2d at 1350. State tort law claims requiring a showing that labeling was inadequate were preempted.

With this background, the court will now turn to the preemption claims offered in this case.

### 1. *Breach of Warranty*

■ The first claim Vermont Log makes is of DAP's alleged breach of *express and implied* warranties of merchantability. With regard to the claim of breach of express warranty, this court is persuaded by the Eleventh Circuit's construction of *Cipollone*. As noted in *Papas II*, FIFRA's preemption provision prohibits *states* from imposing labeling or packaging requirements "in addition to or different from" FIFRA's. 7 U.S.C. § 136v(b). *Papas II*, 985 F.2d at 520. An express warranty, however, is a "self-inflicted" liability, voluntarily assumed by a manufacturer. *Id.; Cipollone*, —— U.S. at ——, 112 S.Ct. at 2622. It is not a requirement imposed by a state. Thus, it is not preempted under FIFRA. Third-party defendant's motion for summary judgment on the breach of *express* warranty claim will therefore be denied.

■ In contrast to the express warranty claim, any breach of implied warranty claim

is preempted by FIFRA. Where an express warranty is a "liability imposed by the manufacturer," implied warranties are affirmative duties imposed by state law. *Papas II*, 985 F.2d at 519, *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 16–18 (1st Cir.1994). FIFRA decrees that states may not impose duties on chemical manufacturers to label their products in a certain way. The upshot of both state labeling requirements and state common law implied warranties is the same: to set an external standard for information which chemical manufacturers must provide to their customers. It is well established that state laws which "interfere with, or are contrary to the laws of congress," are preempted. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). Thus, to the extent that plaintiff's implied warranty claim is based upon inadequacies in labeling, these claims are preempted by FIFRA. *Papas II*, 985 F.2d at 520.

### 2. *Negligence*

█ FIFRA's preemption provision is sharply focused. It denies states the right to regulate the labeling of chemicals substances such as Woodlife. 7 U.S.C. § 136v(b). In *Cipollone*, a plurality of the Supreme Court found that the Cigarette Act's preemption provision, which is similar to FIFRA's, did *not* preempt claims that were unrelated to labeling or rested solely on testing or research practices or other actions separate from advertising or promotion. *Cipollone*, ── U.S. at ──── ────, 112 S.Ct. at 2621–22. Thus, the question for this court is whether the negligent design and manufacture claims asserted in this case arise from labeling or packaging.

In *Papas II*, the Eleventh Circuit found that to the extent that negligence and strict liability claims were related to labeling or packaging they were preempted by FIFRA. In *Shaw*, the Seventh Circuit found that FIFRA preempted state tort claims of negligence and strict liability for failure to warn because in the circumstances of that case they could only arise from labeling or packaging. In order to assess whether some or all of them implicate labeling or packaging,

Vermont Log's failure to warn claims must be considered separately.

Vermont Log alleges negligent design and negligent manufacture of Woodlife. Vermont Log contends that, aside from whatever language the Woodlife label should or should not have contained, the product *itself* was defective, and thus was responsible for injuries to plaintiff.

DAP argues that *Collagen* and the MDA are analogous to this case and mandate FIFRA preemption of *all* Vermont Log's claims. This is a distortion of *Collagen*. The argument ignores facial difference in the language of MDA, 21 U.S.C. § 360k(a), which preempts *any* state regulation of the safety and effectiveness of medical devices, and the contrasting wording of FIFRA, 7 U.S.C. § 136v(b), which only preempts state *labeling* and *packaging* regulations.

The claims of negligent design and manufacture do not relate to labeling or packaging, which is the only realm FIFRA occupies. This court must assume, consistent with *Cipollone*, that matters outside the realm of the statute's express preemption provision are not preempted. ── U.S. at ──, 112 S.Ct. at 2618. By recognizing the negligent manufacture and design claims, the state is not requiring information on the Woodlife label "different from" or "in addition to" the information FIFRA requires. The state is simply imposing an affirmative duty on manufacturers of potentially dangerous chemicals to guard against design or manufacturing defects in their chemicals, and to be liable for damages if injuries are caused by such defects. This does not interfere with FIFRA's purpose of requiring uniform national standards of labeling.

By recognizing claims for negligence such as plaintiff's here, the state is requiring only that fungicides such as Woodlife be safely designed. This sort of indirect regulation falls neatly within the FIFRA "savings" clause: "A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter." 7 U.S.C. § 136v(a). Imposition of a common law duty of care in the design and manufacture of

harmful chemical products does not permit any sale or use prohibited by FIFRA; nor does it in any way frustrate the will of Congress. In sum, FIFRA does not preempt Vermont Log's claim for contribution from DAP for negligent design and manufacture.

### 3. *Labeling*

■ On the other hand, Vermont Log's claim of negligence due to failure to warn is unquestionably preempted by FIFRA. The form a chemical manufacturer must use to warn of potential danger is the label of the chemical package, a domain exclusively controlled by FIFRA, 7 U.S.C. § 136v(b). Caselaw from this circuit and from other circuits overwhelmingly supports FIFRA preemption of the failure to warn claim. *King v. E.I. Du Pont De Nemours and Co.*, 996 F.2d 1346 (1st Cir.1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir.1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, *("Platte II")*, 981 F.2d 1177 (10th Cir.1993) (citations omitted); *Papas v. Upjohn Co.* *("Papas II")*, 985 F.2d 516 (11th Cir.1993) (citations omitted). Vermont Log's failure to warn claim is preempted.

### V. CONCLUSION.

DAP's failure initially to plead preemption will not bar its assertion as a defense, provided DAP files a motion for leave to amend its answer within ten (10) days of the date of this memorandum.

DAP's motion for summary judgment is ALLOWED with respect to the breach of implied warranty claims and the failure to warn claims. Since these claims arise under state law and relate to the labeling and packaging, they are preempted by FIFRA as a matter of law.

DAP's motion for summary judgment is DENIED with respect to the breach of express warranty claim, which does not arise under state law, and the negligent design and manufacture claims, which do not relate to product labeling.