Smith, J.
This matter comes before the court on motions for summaiy judgment of the plaintiffs and defendants, pursuant to Mass.R.Civ.P. 56. The plaintiffs set forth twenty-one counts in their complaint against defendants, all based upon damages alleged to have arisen from plaintiffs’ used of Benlate, an herbicide manufactured by defendant DuPont. The plaintiffs base their claims upon negligence; breach of implied and express warranties; violations of G.L.c. 93A; strict liability under Florida law; and violation of the common law and statutes of the state of Delaware.
Plaintiffs move for summaiy judgment on the issue of negligent manufacturing, on the basis of collateral estoppel. Defendants move for summaiy judgment on six theories: (1) on all counts, on the grounds that all claims are barred by the statute of limitations; (2) on all contract claims against DuPont on the basis of lack of privity; (3) on all tort claims against DuPont on the basis that plaintiffs alleged damages are purely economic and thus not recoverable in tort; (4) on the Florida and Delaware claims against DuPont on the grounds that neither jurisdiction has a substantial relation to the claims; (5) on the Chapter 93A claims against DuPont and Griffin on the grounds that purely economic losses cannot be recovered under chapter 93A; and (6) on all claims to the extent that they are preempted by the Federal Insecticide, Fungicide & Rodenticide Act (“FIFRA”).
For the following reasons, the plaintiffs’ motion is denied. The defendants’ first, second and third motions are denied; the fourth is denied in part and allowed in part; the fifth is allowed; and the sixth is denied in part and allowed in part.
BACKGROUND
The parties have offered evidence which create disputed issues of fact. A reasonable jury could find that the admissible evidence establishes at least the following facts.
Plaintiffs Allan M. Huberman and Susan A. Huber-man are husband and wife, and are in the ornamental plant business. Mr. Huberman incorporated the business under the name M. Huberman, Inc., and the corporation also is a named plaintiff in the case at bar. In the late 1970s, and throughout the 1980s, plaintiffs used Benlate WP and Benlate DF, fungicides manufactured by defendant E.I. DuPont de Nemours & Co., Inc. The evidence indicates that M. Huberman, Inc. purchased Benlate WP from defendant Griffin Greenhouse Supplies, Inc. in the late 1970s; and that throughout the 1980s M. Huberman, Inc. purchased Benlate, and plants which had been treated with Benlate, from a number of Florida businesses.
The evidence tends to show that in approximately 1979 plaintiff Allan Huberman began to notice that some of the plants owned by the corporation exhibited symptoms of disease. Throughout the periods during which plaintiffs used Benlate on the plants (most of the 1980s), these symptoms continued, and became even more severe. The evidence indicates that plaintiff Allan Huberman thoroughly investigated a variety of possible causes of the damage to the plants, but was unable to determine what the cause was. There is no evidence indicating that at that time Allan Huberman, or any of the people he consulted, considered Benlate to be a possible cause. To the contraiy, it tends to show that they thought that Benlate would cure the conditions.
In addition to tending to show that the plants owned by the corporation were damaged, the evidence also tends to show that additional corporate properly was contaminated by Benlate, including pots and the greenhouse itself. The evidence also tends to show that jointly owned property of Mr. and Mrs. Huberman, including the groundsoil under the greenhouse, was damaged by Benlate.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material facts and where the summaiy judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commis *547 sioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
I.Motions to Strike
Affidavits submitted in support of summary judgment “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” Mass.R.Civ.P. 56(e) (1982 ed.). The defendants make numerous motions to strike summary judgment materials on the basis that they violate this rule. The motions are granted with regard to the following materials;
Affidavit of Alan M. Huberman: paragraph 22, sentence 3; paragraph 25 in its entirety; paragraph 26, sentence 2; paragraph 27 in its entirety; paragraph 29, paragraph 30.
The exhibit to the Affidavit of Kenneth M. Suggs, in its entirety.
Affidavit of Harry Arvin Mills, Ph.D.: paragraph 10, sentence 2; paragraph 11 in its entirety; paragraph 12 in its entirety; paragraph 14 in its entirety.
Plaintiffs’ second set of supplemental responses to defendants’ first interrogatories, in their entirety.
The motions are denied with regard to the remaining materials. The “background” section, supra, and the rulings set forth infra, are based only upon the admitted materials.
II. Summary Judgment Motions 1. Collateral estoppel
The plaintiffs seek partial summary judgment on their claims of negligent manufacturing on the theory that collateral estoppel precludes the defendants from relitigating the issue of the DuPont’s negligent manufacturing of Benlate. The plaintiffs rely upon four judicial decisions[3] to support their claim of collateral estoppel. The cases upon which plaintiffs depend for their collateral estoppel claim hold that defendant was negligent in manufacturing certain batches of Benlate which were contaminated with the chemical atrazine. There is a material dispute of fact as to whether the Benlate which allegedly affected plaintiffs’ plants and property came from the atrazine-infected batches. Absent such a connection, granting summary judgment on the issue of negligence would be improper. Second, the defendants point to other judicial decisions where the tribunal found for DuPont on the issue of negligent manufacturing.[4] In circumstances where there are differing judgments on the same issue, applying collateral estoppel is unfair. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330-31 (1979). Summary judgment is therefore denied.
2.Statute of limitations
Under Massachusetts law, the statute of limitations begins to run when a plaintiff learned or should have learned what the likely cause of his injury was. Doucette v. Handy and Harmon, 35 Mass.App.Ct. 724, 725 (1994); rev. denied 417 Mass. 1102 (1994). While the facts here clearly establish that plaintiff Allan Huber-man knew of damage to property as early as 1980, they do not indicate to any degree of certainty that he knew or should have known that Benlate could be the cause of the harm prior to 1992 (which is the year he filed the complaint). Symptoms of harm were present prior to the use of Benlate, and in fact these symptoms were the very reason that plaintiff Allan Huberman began to use Benlate. While in hindsight it is logical to conclude that Benlate caused further problems to the plants, at the time of the injury such a conclusion was not reasonably apparent. Allan Huberman conducted a reasonable investigation of various possible causes (such as soil damage, and temperature). Given the fact that Benlate was widely seen as a cure, and that there was no reasonably apparent causal relation at the time in question, it would be inappropriate to conclude that he could have or should have known that Benlate was the cause.
Questions as to the time of the plaintiffs’ discovery of the causal connection are issues of fact which should be resolved by the jury. See Castillo v. Massachusetts General Hospital, 38 Mass.App.Ct. 513, 516 (1995), and Riley v. Presnell, 409 Mass. 239 (1991), (holding that in medical malpractice cases, the question of when a plaintiff knew or should have known of his cause of action is one to fact which in most instances would be left to the trier of fact). Summary judgment is denied on this issue.
3.Privity
The applicable statute regarding privity states:
Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods.
G.L.c. 106, §2-318 (1984 ed.). The Supreme Judicial Court has held that §2-318 applies only to claims in the nature of tort, and does not apply to claims involving solely economic damages. Bay State Spray *548 & Provincetown Steamship, Inc. v. Caterpillar Tractor Co., 404 Mass. 103 (1980). In determining what constitutes economic damages, the SJC referred to Marcil v. John Deere Indus. Equip. Co., 9 Mass.App.Ct. 625 (1989), which characterizes economic loss as “damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage lo other property." Bay State Spray at 104; Marcil at 630, n.3. (emphasis added, citations omitted). The claims asserted in this case are based upon damage to other property (plants, pots, groundsoil, etc.) caused by the product at issue (Benlate). For this reason, and for the reasons set forth in the answer to question 4 below, §2-318 applies and DuPont, as the manufacturer, may not assert lack of privity as a defense. Summary judgment is denied.
4.Tort claims
In deciding whether to find that the claims in Bay Slate Spray were solely economic and outside of the scope of §2-318, or tortious and within the scope of §2-318, the SJC relied upon the analysis of the U.S. Supreme Court in East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). Bay State Spray at 109, 110. In East River, the Supreme Court distinguished situations in which the product itself is damaged, and situations in which the product causes damage to other property. It held that the former situation is not in the nature of tort and thus a products liability action would be inappropriate; and that the latter situation is in the nature of tort, and a products liability action is appropriate. East River at 866-71.
In the present case the claims of the plaintiffs involve damage to pots, soil and to the greenhouse itself. Clearly, the Benlate is alleged to have caused damage to property other than itself. The lost profits and costs of replacing soil and equipment arise from, and are directly related to the alleged properly damage, and consequently should not be characterized as being solely economic damages. Therefore, summary judgment is denied to the extent that plaintiffs’ claims are based upon property damage.
The plaintiffs’ claims also are based in part upon allegations of physical injuries to the individual plaintiffs. No evidence has been proffered to support such allegations, and the parties have agreed that no such evidence exists. As a result, summary judgment is granted to the extent that plaintiffs’ claims are based upon personal injury.
5.Florida and Delaware claims
In tort and contract actions, Massachusetts courts will apply the law of the state with the most significant relationship to the facts and parties. (See Pevoski v. Pevoski, 371 Mass. 358 (1976), regarding torts; and see Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622 (1984), and G.L.c. 106, §1-105(1) regarding contracts.) The parties to the present case agree that the evidence fails to indicate that there is any significant connection between the asserted claims and the states of Florida and Delaware. In accordance with their agreement, summary judgment is granted on all claims based upon Delaware and Florida law.
6.G.L.c.93A
For the same reasons set forth in sections 3 and 4, supra (regarding the distinction between solely economic damages and tort damages), the plaintiffs may maintain an action under G.L.c. 93A, §11. However, the plaintiffs cite to no legal authoriiy to support their claim under § 11 for defendant DuPont’s alleged failure to discuss settlement. Consequently, summary judgment is granted to the extent that plaintiffs’ §93A claim is based upon defendant DuPont’s alleged failure to discuss settlement of the case.
7.FIFRA Preemption
“The purpose of Congress is the ultimate touchstone of preemption analysis.” Cipollone v. Liggett Group, Inc., U.S., 112 S.Ct. 2608, 2617 (1992) (citations omitted). “When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a ‘reliable indicium of congressional intent with respect to state authority,’ ‘there is no need to infer congressional intent to preempt state laws from substantive provisions’ of the legislation.” Id. at 2618.
FIFRA provides a detailed scheme for regulating the content of the labels of fungicides. 7 U.S.C. §§136 to 136y (1980 ed. Supp. 1995). Regarding preemption, §136v states:
(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchap-ter.
(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
7 U.S.C. §137v (1980 ed. Supp. 1995).
The First Circuit Court of Appeals has held that, “in light of Cippollone, FIFRA preempts the plaintiffs’ state law tort claims based on the defendants’ alleged failure to provide adequate warnings about the health hazards” of a FIFRA-controlled product. King v. E.I. DuPont de Nemours & Co., 996 F.2d 1346, 1349 (1993). Applying this standard, summary judgment must be granted to the extent that plaintiffs assert that DuPont was negligent for failing to warn them of the harmful effects of untainted Benlate (i.e., Benlate not contaminated with atrazine).
In addition, summary judgment also is granted to the extent that any claims are based upon an implied warranty. This conclusion is in accord with a recent decision of the Federal District Court of Massachu *549 setts, which stated that “FIFRA. decrees that states may not impose duties on chemical manufacturers to label their products in a certain way. The upshot of both state labeling requirements and common law implied warranties is the same: to set an external standard for information which chemical manufacturers must provide to their customers . . . Thus, to the extent that plaintiffs implied warranty claim is based upon inadequacies in labeling, these claims are preempted by FIFRA.” Jillson v. Vermont Log Buildings, Inc., 857 F.Supp. 985, 991 (D. Mass. 1994).
However, summary judgment is denied to the extent that plaintiffs base their claims upon negligent manufacturing, testing or formulation; breach of an express warranty; or negligent failure to notify plaintiff of the danger of the atrazine-infected Benlate. Again the logic of Jillson provides guidance; “An express warranty ... is a ‘self inflicted’ liability, voluntarily assumed by a manufacturer,” and “is not a requirement imposed by a state. Thus, it is not preempted under FIFRA.” Id. at 990, quoting Cippollone, 112 S.Ct. at 2262. A recent case from the Federal District Court of Puerto Rico also is persuasive. Applying King in a case involving facts nearly identical to the case at bar, the Puerto Rico Court found that, although claims based upon implied warranties were preempted, the plaintiffs could “proceed with a claim that Benlate was negligently contaminated with atrazine, or that DuPont negligently failed to notify consumers about the contamination, or that DuPont was negligent in formulating Benlate.” In re DuPont-Benlate Litigation, 859 F.Supp. 619, 622 (D. Puerto Rico 1994). The same conclusion is appropriate here.
The Puerto Rico court also distinguished between failure to warn about the possible harmful effects of the use of uncontaminated Benlate and the failure to notify plaintiffs of the harmful effects of atrazine-infected Benlate, finding that claims based upon the former were preempted, while claims based upon the latter were not. “[W]e see no reason why state law could not require DuPont to have ensured proper notice to the plaintiffs of the existence of the alleged defect. Litigation of state tort actions which would require pesticide manufacturers to notify consumers of the contamination of certain products would not interfere with FIFRA’s requirement that pesticides in their intended form be packaged and labeled only as mandated by federal law.” Id. Again, similar reasoning is appropriate in the present case, and summary judgment is denied to the extent that plaintiffs’ claims are based upon allegations that DuPont failed to notify the plaintiffs of the effects of atrazine-contami-nated Benlate.
ORDER
It is therefore ORDERED that summary judgment be:
1.GRANTED in favor of the defendants on counts 7, 8 and 9 because of the lack of substantial connection between the facts of the case and the state of Florida;
2. GRANTED in favor of the defendants on Counts 12, 13, and 14 because of the lack of a substantial connection to Delaware;
3. GRANTED in part in favor of the defendants on Counts 4, 5, 6, 15, 16 and 17, to the extent that these claims are based upon breach of an implied warranty under Massachusetts law, failure to warn of the harmful effects of the use of untainted Benlate (i.e., Benlate not infected with atrazine), and personal injuries to the named plaintiffs;
4. GRANTED in part in favor of the defendants on Counts 10 and 11, to the extent that the claims are based upon defendants’ alleged failure to negotiate a settlement of the plaintiffs’ claims;
5. DENIED on the remaining summary judgment motions of defendants;
6. DENIED on plaintiffs’ motion for partial summary judgment on collateral estoppel, regarding defendant DuPont’s negligence.

Petals In Paradise, Inc. v. E.I. DuPont De Nemours and Company, Hawaii First Circuit Court, Civil Action No. 92-43330-11; Kawamata Farms, Inc. v. United Agri Products, Civil No. 91-437 and Tomono v. E.I. DuPont De Nemours and Company, Civil No. 92-247K, consolidated Hawaii Third Circuit Court cases (January 26, 1995); and Shady Grove Plantation and Nursery, Inc. v. E.I. DuPont De Nemours and Company, Inc., C.A. No. 5:92-1373-6 (U.S.S.C. March 9, 1955).

Steven Lott, et al. v. E.I. DuPont De Nemours and Company, Inc., No. CV-92-4076 (Mobile County Cir. Ct.., Ala.) and Department of Agriculture and Consumer Services v. E.I. DuPont De Nemours and Company, case No. 94-2850, State of Florida, Division of Administrative Hearings.