October 11, 1996 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-2084

ROBERT B. GRENIER, ET AL.,

Plaintiffs, Appellees,

v.

VERMONT LOG BUILDINGS, INC., ET AL.,

Defendants, Third-Party Plaintiffs, Appellants.

v.

DAP, INC. and CHAMPION INTERNATIONAL CORP.,

Third-Party Defendants, Appellees. 



ERRATA SHEET

The opinion of this Court, issued on September 25, 1996, is
amended as follows:

On page 10, 3rd line down, replace "Vermont Life" with "Vermont
Log".

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-2084

ROBERT B. GRENIER, ET AL.,

Plaintiffs, Appellees,

v.

VERMONT LOG BUILDINGS, INC., ET AL.,

Defendants, Third-Party Plaintiffs, Appellants.

v.

DAP, INC. and CHAMPION INTERNATIONAL CORP.,

Third-Party Defendants, Appellees. 



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Boudin and Stahl, Circuit Judges. 



Carol A. Griffin with whom Lawrence F. Boyle, W. Joseph Flanagan 
and Morrison, Mahoney & Miller were on brief for appellants. 
Roger D. Matthews with whom Nick K. Malhotra and Madan and 
Madan, P.C. were on brief for appellees DAP, Inc. and Champion 
International Corp.



September 25, 1996



BOUDIN, Circuit Judge. Joan Grenier suffered from 

chronic gastritis for several years, allegedly in reaction to

the wood preservative applied to the walls of her log home.

She and her family sued Vermont Log Buildings, Inc. ("Vermont

Log"), the manufacturer of their home, claiming negligence,

breaches of warranty, and violation of Mass. Gen. L. ch.

93A.1 Vermont Log in turn filed a third-party complaint

against the alleged manufacturers of the preservative. The

district court granted summary judgment for the

manufacturers, rejecting Vermont Log's third-party claims.

Vermont Log appeals. We affirm.

Because the case was decided on summary judgment, our

recitation of the facts is based primarily on the facts as

alleged. Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 

(1st Cir. 1993), cert. denied, 115 S. Ct. 56 (1994). In 

April 1975, Robert and Joan Grenier purchased the components

of a log house from an authorized dealer for Vermont Log.

The logs were shipped to the Greniers' lot in Massachusetts

and assembled there. The Greniers moved into the house in

May 1975. Vermont Log had treated the logs with Woodlife, a

wood preservative containing the active ingredient

pentachlorophenol.

 

1Chapter 93A outlaws "[u]nfair methods of competition
and unfair or deceptive acts or practices in the conduct of
any trade or commerce," and permits awards of multiple
damages and attorneys' fees.

-2- -2-

In early 1982, Joan Grenier began displaying symptoms of

gastritis, and continued to suffer intermittent stomach and

back pain for several years. A doctor who examined her in

April 1987 suspected that her condition was caused by wood

preservative in the logs of the Greniers' cabin. Later tests

revealed an elevated level of pentachlorophenol in her body.

When she moved out of the house, her level of

pentachlorophenol dropped and her symptoms abated.

At the time the Greniers bought their cabin, Woodlife

was registered as a pesticide as required by the Federal

Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7

U.S.C. 136-136y. FIFRA is one of a family of federal

regulatory statutes that are concerned with health, safety

and (in this case) the environment. Two of its main

components are a requirement of prior approval of the product

by the Environment Protection Agency, 7 U.S.C. 136a(a), and

of EPA approval of the labeling supplied with the product,

id. 136a(c)(1)(C). 

In early 1975, the Woodlife labeling, which EPA had

approved, warned that the product was toxic and was not "for

use or storage in or around the home." The labeling also

included a section describing the uses of the product:

"PRODUCT USES: Millwork, shingles, siding, structural lumber,

fences, trellises, outside furniture, vacation homes, all

lumber and wood products." On September 26, 1975, the EPA

-3- -3-

approved a modified label for Woodlife. On the new labeling,

the section listing product uses no longer included "vacation

homes" as a use and added a further warning: "Do not use on

interior surfaces which are not to be finished."

The Greniers filed suit in 1990 against Vermont Log and

two allegedly related corporate entities (collectively,

"Vermont Log"), alleging that pentachlorophenol used in the

log home caused Joan Grenier's illness. The claims as

ultimately amended comprised ten different counts, including

bare bones claims for express and implied warranty breach,

for negligence in design, manufacture and failure to warn,

and under chapter 93A. Joan Grenier sought damages for her

injuries; her husband and the Greniers' three children

claimed loss of consortium.

In 1991, Vermont Log filed a third-party complaint

against DAP, Inc. and Roberts Consolidated Industries, the

alleged manufacturers, sellers, and distributors of Woodlife.

Thereafter, Champion International, Inc., was added as a

third-party defendant (Roberts was later dropped from the

case by agreement). As amended, Vermont Log's third-party

complaint asserted claims for contribution under Mass. Gen.

L. ch. 231B based on negligence by the manufacturers of

Woodlife, and claims for breaches of warranty by those

manufacturers. 

-4- -4-

In August 1991, DAP and Roberts removed the action on

diversity grounds to federal district court where it was

assigned to Judge Zobel. In due course, Vermont Log and the

third-party defendants moved for summary judgment on the

Greniers' claims on the grounds that they were barred by the

statute of limitations and that they were preempted by FIFRA.

On November 4, 1992, Judge Zobel ruled that Joan and Robert

Grenier's warranty and negligence claims were barred by the

statute of limitations, but that their chapter 93A claims

were timely under its longer limitations period. She also

held that none of the children's claims for loss of

consortium was barred, since the statute of limitations was

tolled during their minority.

Judge Zobel further held that Vermont Log could seek

contribution from DAP and Champion (for convenience we refer

to them hereafter as "the Woodlife manufacturers"); but she

ruled that Vermont Log could not obtain indemnification

because by selling the logs to the Greniers Vermont Log

participated in the conduct that allegedly damaged the

Greniers. Finally, Judge Zobel concluded that under

Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597 (1991), 

none of the claims was preempted by FIFRA.

After Judge Zobel's November 1992 ruling, the case was

reassigned to newly appointed Judge Gorton. In May 1993, the

Woodlife manufacturers filed new motions for summary

-5- -5-

judgment, this time against Vermont Log; they argued (based

on intervening case law) that FIFRA preempted all of Vermont

Log's remaining claims against them. Then-Magistrate Judge

Ponsor, to whom the case had been referred, held a hearing on

the motion in September 1993.

In July 1994, Judge Ponsor, having recently been

appointed a district judge, relinquished jurisdiction in this

case. At the same time he issued a memorandum in a companion

case brought by a different plaintiff against Vermont Log.

Judge Ponsor there ruled that FIFRA preempted claims of

failure to warn and breach of implied warranty, but not

claims of breach of express warranty and negligent design and

manufacture. Jillson v. Vermont Log Bldgs., Inc., 857 F. 

Supp. 985 (D. Mass. 1994).

After the present case was returned to Judge Gorton, he

ruled that all of Vermont Log's claims were "related to the

labeling and packaging" of Woodlife. While noting that a

properly supported express warranty claim might not be

preempted, Judge Gorton found Vermont Log's claim to be

"based entirely on the label" because "[n]o other factual or

evidentiary basis for the claim was provided in the

pleadings." Judge Gorton granted summary judgment to DAP and

Champion and entered a separate final judgment in their

favor. See Fed. R. Civ. P. 54(b). 

-6- -6-

On appeal, Vermont Log argues that the district court

erred in finding that all of its claims were preempted: it

says that FIFRA preempts only those state-law claims based on

the labeling or packaging of pesticides and it asserts that

most of its claims are not based on the labeling or packaging

of Woodlife but rather upon design and manufacturing defects

and upon failure to warn unrelated to labeling and packaging.

We review the district court's grant of summary judgment de 

novo, drawing reasonable inferences in favor of Vermont Log. 

Brown v. Hearst Corp., 54 F.3d 21, 24 (1st Cir. 1995). 

We begin, in the classic fashion, by seeking to lay the

counts allegedly preempted along side the statutory

preemption clause and the cases that have interpreted it and

similar language in other statutes. Where, as here, Congress

has included an express preemption clause in the statute, we

start with the language of that provision. Medtronic, Inc. 

v. Lohr, 116 S. Ct. 2240 (1996); Cipollone v. Liggett Group, 

Inc., 505 U.S. 504, 517 (1992). FIFRA's preemption clause, 7 

U.S.C. 136v, reads as follows:

(a) In general

A State may regulate the sale or use
of any federally registered pesticide or
device in the State, but only if and to
the extent the regulation does not permit
any sale or use prohibited by this
subchapter.

(b) Uniformity

-7- -7-

Such State shall not impose or
continue in effect any requirements for
labeling or packaging in addition to or
different from those required under this
subchapter.

It is apparent from subsection (a), as well as other

statutory language, e.g., 7 U.S.C. 136w-1, that FIFRA does 

not wholly oust the states from pesticide regulation. See 

generally Mortier, 501 U.S. at 612-13. And it is equally 

apparent from subsection (b) that the state cannot apply

different or additional "requirements" for "labeling and

packaging." It was once an open question, but is now settled

by the Supreme Court in Cipollone and Lohr, that 

"requirements" in this context presumptively includes state

causes of action as well as laws and regulations. Lohr, 116 

S. Ct. at 2251-53 (plurality opinion), id., 2259-60 (Breyer, 

J., concurring in part and concurring in judgment), id., 

2262-63 (O'Connor, J., Scalia, J., and Thomas, J., concurring

in part and dissenting in part); Cipollone, 505 U.S. at 521- 

22 (plurality opinion), id., 548-49 (Scalia, J. and Thomas 

J., concurring in judgment in part and dissenting in part).

This court so held in King v. E.I. Dupont de Nemours & 

Co., 996 F.2d 1346 (1st Cir.), cert. dismissed, 114 S. Ct. 

490 (1993), which, unlike Cipollone and Lohr, involved FIFRA 

itself. Other circuits are in accord. E.g., Papas v. Upjohn 

Co., 985 F.2d 516 (11th Cir.), cert. denied, 114 S. Ct. 300 

(1993). Our case involves third-party claims--by the log

-8- -8-

supplier against the chemical manufacturers--but nothing in

the preemption clause limits its effects to suits by

consumers. Indeed, Vermont Log itself concedes that its

claims based on the inadequacy of EPA approved labeling are

preempted by FIFRA; its objection, as already noted, is that

most of its claims do not fit this rubric.

To appraise this objection requires a closer description

of Vermont Log's actual claims. Here, Vermont Log's amended

third-party complaint is structured so that, in four separate

counts, two different categories of claims are directed at

DAP and Champion. In parallel counts III and V, Vermont

Log's complaint says that DAP and Champion are or may be

liable to Vermont Log for their own "negligent design,

manufacture, and failures to warn"; confusingly, Vermont Log

then in the same counts asserts these wrongs simply as the

basis for a pro rata contribution claim against DAP and

Champion.2

Then, in two other parallel counts (IV and VI), Vermont

Log asserts that DAP and Champion are or may be liable for

breach of "express and implied warranties that said product

[apparently a reference to Woodlife] was of merchantable

 

2It is unclear why Vermont Log sought only pro rata
contribution since the negligent acts alleged might also
entitle it to full recovery absent some bar like preemption. 
Cf. Fireside Motors, Inc. v. Nissan Motor Corp., 479 N.E.2d 
1386, 1389 (Mass. 1985) (citing Restatement (Second) of Torts 
886B, cmt. c (1979)).

-9- -9-

quality, free of hazardous defects, and fit for the

particular purpose intended." On this claim, Vermont Log

seeks not pro rata recovery but compensation for whatever it

may have to pay to the Greniers plus its costs in conducting

the litigation. It is easiest to discuss all of Vermont

Log's claims functionally, that is, in terms of the

defendants' alleged wrongful conduct. 

Failure to warn. The most obvious state-law claim for 

Vermont Log, preemption aside, is that the Woodlife

manufacturers should have warned Vermont Log that Woodlife

was not suitable for residences. This claim, whether

presented as a negligence claim or a claim for breach of

implied warranty, is preempted by FIFRA as far as the present

case is concerned. Vermont Log concedes this is so as to any

inadequacy in the labeling as approved by EPA.

It argues, however, that FIFRA permits a failure to warn

claim so far is it is not "based on labeling or packaging." 

Here lurks a potentially vexing problem: one can imagine

claims based on what was said or not said during

conversations, in correspondence, or in point of sales signs

or the absence of such signs. Whether and to what extent

these kinds of claims should be preempted depends on a

-10- -10-

reading of section 136v and related judgments. The answers

are far from clear.3

But the structure of FIFRA indicates that Congress

intended the pesticide labeling to bear the primary burden of 

informing the buyer of dangers and limitations. See 7 U.S.C. 

136a(c); 40 C.F.R. 156.10. If the plaintiff wants to

premise a failure to warn claim on a communication or failure

to communicate by some other means, it is incumbent on the

plaintiff to set forth a coherent specific claim. On appeal,

Vermont Log does not even attempt to explain how its failure

to warn claim is based on anything other than the alleged

inadequacy of the labeling approved by EPA.

Affirmative misstatement. Under Massachusetts law, an 

express warranty may be created where the seller makes any

"affirmation of fact or promise" or "description of the

goods" and this statement becomes part of the basis of the

bargain. Mass. Gen. L. ch. 106, 2-213. An inaccurate

statement might also support a recovery under a theory of

negligent misrepresentation. Cf. Danca v. Taunton Sav. Bank, 

429 N.E.2d 1129, 1133-34 (Mass. 1982). Such claims could

conceivably be based either on statements made in the

 

3Compare Chemical Specialties Manufacturers Ass'n v. 
Allenby, 958 F.2d 941, 946-47 (9th Cir.), cert. denied, 113 
S. Ct. 80 (1992) (state statute requiring point-of-sale
warnings not preempted), with Taylor AG Industries v. Pure- 
Gro, 54 F.3d 555, 561 (9th Cir. 1995) (failure to warn claims 
based on inadequacy of point-of-sale signs preempted).

-11- -11-

labeling or elsewhere; and the statements might be either

consistent with FIFRA requirements or in violation of them.

These variations give rise to different and difficult

preemption questions. The circuits are not unanimous even as

to FIFRA itself, see generally Lowe v. Sporicidin Int'l, 47 

F.3d 124, 128-29 (4th Cir. 1995), let alone other statutes.

As Lohr illustrates, the signals from the Supreme Court are 

blurred by disagreements within the Court. But, in this

case, the only affirmative misstatement identified by Vermont

Log is the statement in the original labeling that Woodlife

was suitable forapplication to "all wood andlumber products."

This unqualified statement may have been inaccurate, as

its later revision suggests, but it was a statement contained

in EPA-approved labeling. To premise liability on the

inaccuracy of the statement is in substance to determine that

a different statement should have been made in the labeling.

Yet the statute itself prohibits a state requirement as to

labeling that is "different" than that prescribed by federal

law. 7 U.S.C. 136v. See Lowe, 47 F.3d at 129. Thus the 

only express warranty claim specifically identified by

Vermont Log is preempted.

Misdesign or manufacture. Whether on a warranty or 

negligence theory, recovery might be premised on mistakes in

the design or manufacture of the product, and the

manufacturing defect might be generic or a defect in a single

-12- -12-

item. E.g., Hayes v. Ariens Co., 462 N.E.2d 273, 277 (Mass. 

1984). Whether such claims are preempted may depend both on

their precise make-up and on the underlying statute. Under

FIFRA, the situation is complicated by the fact that the

preemption clause refers only to labeling and packaging while

the statute empowers the agency to regulate the product as

well as the description. 7 U.S.C. 136a(a).

In all events, merely to call something a design or 

manufacturing defect claim does not automatically avoid

FIFRA's explicit preemption clause. In re DuPont-Benlate 

Litigation, 859 F. Supp. 619, 623-24 (D.P.R. 1994). Here, 

Vermont Log's only elaborated claim under this heading is

that Woodlife was defectively designed or manufactured

because it was foreseeable that it would be used on

residences and it was unfit for this use. But this claim is 

effectively no more than an attack on the failure to warn

against residential use and therefore is a preempted claim.

This certainly does not mean that every misdesign or

mismanufacturing claim would be debarred by section 136v. In

a batch of properly made products, one item might be

defective or tainted; or perhaps one might design a

pesticide that, while properly approved and labeled, was

unduly dangerous for any legitimate use. In the former case,

it is hard to see why FIFRA preemption would even be

arguable; in the latter, there would be at most an implied 

-13- -13-

preemption claim, based not on section 136v but on EPA's

approval of the product; and it is by no means clear that

such a preemption claim would prevail.4

However, in this instance, Vermont Log has provided no

hint whatever of how Woodlife has been misdesigned or

mismanufactured beyond Vermont Log's suggestion--which we

regard as a disguised labeling claim--that the product was

not fit for residential use. Vermont Log's position,

implicit in its brief and explicit in oral argument, is that

no such disclosure or elaboration was required. It is

enough, it contends, that its complaint alleged misdesign and

mismanufacture in general terms and that not every such claim

is automatically preempted.

If the Woodlife manufacturers had squarely argued a lack

of evidence in their motion for summary judgment, Vermont

Log's position could be rejected out of hand. Vermont Log

bears the burden of proof at trial and, under Celotex Corp. 

v. Catrett, 477 U.S. 317, 322-23 (1986), it would take very 

little in the way of a negative averment at the summary

judgment stage to require Vermont Log to identify its

evidence--trialworthy evidence of a specific misdesign or

manufacturing defect which was not a disguised mislabeling

 

4See Cipollone, 112 S. Ct. at 2622-23. Compare Mendes 
v. Medtronic, 18 F.3d 13 (1st Cir. 1994) (Medical Device 
Act), with In re DuPont-Benlate-Litigation, 859 F. Supp. at 
622-23 (FIFRA).

-14- -14-

claim. Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 

(1st Cir. 1995).

Whether Vermont Log got such due notice of a Celotex 

challenge could be debated. On the one hand, the summary

judgment motion was cast primarily in abstract preemption

terms; on the other hand, Vermont Log could at any time have

explained to the district court just what kind of misdesign 

or manufacturing defect claim it was making over and above a

recast version of its preempted labeling claim. As is often

the case, the answer is to be found more in common sense than

categorical rules.

If we thought that Vermont Log had been genuinely

misled, we would remand to allow it to identify its misdesign

or mismanufacture claim and require the chemical

manufacturers to formulate a new summary judgment motion.

Indeed, we might be tempted to follow this course even now if

Vermont Log had troubled to tell us just what specific design

or manufacturing defect it plausibly suspected or how it had

been denied a promising opportunity to unearth this

information through discovery. But at oral argument our most

persistent questions on the subject were met only with

generalities.

It is too late in the day for such gambits. It is one

thing at the outset of a case to ask for indulgence to pursue

initial discovery; it is quite another matter, on appeal and

-15- -15-

after five years, to ask for a reversal based on theoretical

possibilities but without any effort to explain how a remand

might bear fruit. If there are unpreempted claims of design

or manufacturing defect, Vermont Log has never adequately

identified them, let alone pointed to any supporting

evidence.

Indemnification. As already explained, Vermont Log's 

third-party complaint did explicitly request contribution; in

fact, its negligence counts were asserted not as independent

claims for full recovery but merely as the basis for pro rata

contribution under the Massachusetts statute. Conversely,

although Vermont Log now speaks of "indemnification" claims,

the third-party complaint nowhere refers to indemnification,

although the warranty counts seek the same damages that

indemnification might provide.

Traditionally, indemnification has comprised a distinct

body of doctrine that, to put the matter too crudely, permits

a vicariously liable party (e.g., an innocent principal) to 

obtain reimbursement from a culpable party (e.g., a 

blameworthy agent) whose conduct gave rise to the liability.

P. Keeton, Prosser and Keeton on Torts 51, at 341-44 (5th 

ed. 1984); Decker v. Black and Decker Mfg. Co., 449 N.E.2d 

641, 644-45 (Mass. 1983). Thus, indemnification may

sometimes be available even when no other direct tort or

contract claim will lie.

-16- -16-

On appeal, Vermont Log says as an alternative final

argument that Judge Zobel erred in rejecting its "claim of

indemnity" on the ground that "[i]demnity is permitted only

where one does not join the negligent act . . . ." We

confess ourselves puzzled by Judge Zobel's ruling; while the

principle may be sound, it is far from clear that Vermont

Log's culpability in this case--at least on some warranty

theories asserted by the Greniers--is of a kind that would

automatically preclude an indemnification claim by Vermont

Log against DAP and Champion.

Yet even if we assume (dubitante) that Vermont Log 

has asserted a separate claim for indemnification and assume

further that it is not barred from indemnification by its own

participation in the wrong, a crucial obstacle remains. The

body of doctrine comprising indemnification law varies from

state to state; but in Massachusetts, an indemnification

claim does require a showing of fault on the part of the 

parties or parties against whom the demand for

indemnification is leveled. Stewart v. Roy Bros., 265 N.E.2d 

357, 365 (Mass. 1970).

Here, the only allegations of fault made by Vermont Log

against DAP and Champion are the charges of negligence and

breaches of warranty made in counts III-VI of the amended

third-party complaint. We have already found these charges

to be inadequate, some because of federal preemption and some

-17- -17-

because they are both too general and wholly unsupported.

And if these claims are themselves inadequate, there is no

foundation for a showing of fault as to DAP and Champion that

would permit Vermont Log to claim indemnification. 

There is a final point to be made that is pertinent to

future cases of this kind. Vermont Log has now placed itself

in an unhappy position where the Greniers might recover

against it while it would no longer have recourse against

those who supplied it with Woodlife. This assumes, perhaps

fancifully, that the Greniers, or at least the minors, might

structure and then prove a claim that managed at the same

time to avoid every type of preemption and any kind of

defense based on Vermont Log's own possible ignorance. But

the theoretical risk is there.

This risk arises directly from the entry of a separate

final judgment under Rule 54(b) against Vermont Log on its

third-party claims in advance of the full resolution of the

Greniers' first-party claims against Vermont Log. If Vermont

Log had objected to a separate judgment in the district court

and appealed on that issue in this court, we would be very 

much open to such an argument. The reason is the overlap of

first-party and third-party claims in this case and the

resulting risk (in this case) of inconsistent results.

But Vermont Log has not made this argument. If it had

no objection to the entry of a separate judgment, certainly

-18- -18-

the district court had no obligation to withhold such a

judgment. Indeed, Vermont Log may have had tactical reasons,

unknown to us, for allowing the uncoupling of the two

complaints. Our sole reason for mentioning the point is to

alert district courts in future cases that such an objection

to a separate judgment may have significant force.

Affirmed. 

-19- -19-